**Peggy STRICKLAND, a minor, by Mr. and Mrs. Virgil Justice, her Parents and Next Friends, and Virginia Crain, a minor, by Doris Crain, her Mother and Next Friend, Plaintiffs,**

v.

**S. L. INLOW et al., Defendants.**

**Civ. No. FS 72–C–11.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Sept. 29, 1972.

Ben Core, Daily, West, Core & Coffman, Fort Smith, Ark., for plaintiffs.

Joe Hardegree, Mena, Ark., for Mena Special School District.

Eugene R. Warren, Warren & Bullion, Little Rock, Ark., for S. L. Inlow and Duddy Waller.

## MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

The plaintiff, Peggy Strickland, is a minor and brought this action through and by her parents, Mr. and Mrs. Virgil Justice, as her next friends. The plaintiff, Virginia Crain, is a minor and brought this action by and through her mother, Doris Crain, as next friend.

The defendant, S. L. Inlow, was at all times pertinent herein the Superintendent of Schools at Mena, Arkansas and employed as such by the Board of Education of the defendant, Mena Special School District. The defendant, Duddy Waller, was at all times pertinent herein the Principal of the High School at Mena, Arkansas, employed as such by the Board of Education of Mena Special School District. All other personnel defendants are members of the Board of Education for the Mena Special School District, and were serving at all times pertinent herein. This action is brought against each defendant in both his or her individual capacity and official capacity with the Mena Special School District. The defendant School District is the political sub-division and arm of the government of the State of Arkansas charged with the responsibility of conducting the public schools for Mena Special School District in Polk County, Arkansas.

All parties hereto are residents of Polk County, Arkansas except Mena Special School District and it is located in Polk County, Arkansas.

On and prior to February 18, 1972, plaintiffs were duly enrolled as students in the High School in Mena, Arkansas, both in their sophomore year, and were attending said school regularly and in good standing, making passing grades and neither having ever been subjected to any disciplinary procedure before February 18, 1972.

At some time prior to February 18, 1972 the defendants or their predecessors had promulgated as a part of the school policy a certain rule and regulation as follows:

"3. Suspension

\* \* \* \* \* \*

b. Valid causes for suspension from school on first offense:

Pupils found to be guilty of any of the following shall be suspended from school on the first offense for

the balance of the semester and such suspension will be noted on the permanent record of the student along with reason for suspension.

\* \* \* \* \* \*

4. The use of intoxicating beverage or possession of same at school or at a school sponsored activity."

On February 18, 1972 the plaintiffs were both expelled from the Mena Public Schools for one week by the defendant Duddy Waller on a charge of having violated the foregoing rule and on February 18, 1972, the defendant School Board expelled the plaintiffs for the balance of the semester on the same charge.

Following their expulsion by the School Board the plaintiffs, with their parents present, met with the defendants Inlow and Waller and were told of the action of the Board—that it was based on the foregoing rule—that the Board considered the rule mandatory and that they had no choice but to make the expulsion for the balance of the school term. The parents of the plaintiffs requested the defendants Inlow and Waller to call a special meeting of the Board but the defendants declined to do so. The plaintiffs then employed counsel and upon their attorney's request, the School Board held a special meeting on March 2, 1972 at which the plaintiffs, their parents and their attorney were present.

At the hearing the girls freely admitted they had added two 12 ounce bottles of a flavored malt liquor beverage called "Right Time" to one and a half gallons of punch at a school function held on February 7, 1972 for the purpose of "spiking the punch."

They expressed regret for the childish prank and asked that the School Board change its policy of suspension for a semester as punishment for the violation.

The School Board, after hearing all the offered evidence, voted not to change the school policy and to expel the young ladies for the remainder of the semester. It also made provision through its school counselor that the girls could follow a course of instruction including some correspondence course in English from the University of Arkansas that would enable the girls to graduate with their class if they did the required work.

The plaintiffs then amended their Complaint and alleged as follows:

"The actions of the defendants as specified in the Complaint heretofore filed in this cause, and each of them, has damaged each of these plaintiffs by depriving them, unlawfully, of their right to attend the public school at Mena, Arkansas, and by forcing them to pursue some substitute means of education at their expense and inconvenience; and further has caused and will continue to cause humiliation and embarrassment to the plaintiffs by reason of the stigma attached to the action of the defendants in assessing excessive punishment by way of expulsion of each of the plaintiffs for the balance of the term and for enforcement of the School Board policy under color of State Law requiring the making of a record of the unlawful punishment assessed against these plaintiffs, which record will continue to follow, harass, intimidate, abuse and embarrass the plaintiffs for the remainder of their lives. In addition, the plaintiffs have been and are being compelled to litigate with the defendants their right to attend the public schools of Mena, Arkansas, at great inconvenience and expense and will continue to do so until this litigation is terminated.

The plaintiffs further allege that the actions of the defendants have been taken with malice toward these plaintiffs and without any bases therefor and with such wanton disregard of the rights of these plaintiffs as to subject themselves personally and individually, and as to subject the school district which they represent, to punitive damages in this case in the amount of $5,000.00 for each defendant herein.

Wherefore, the plaintiffs pray judgment against the defendants and each of them, in their personal and individual capacities respectively, and against the defendant school district, jointly and

severally, in the amount of $25,000.00 as compensatory damages for each plaintiff herein; and reasonable attorney's fees, and further pray judgment against each defendant, personally and individually, and against the defendant school district, for punitive damages in the amount of $5,000.00 against each such defendant. The plaintiffs further pray judgment for all of their costs herein laid out and expended."

The case was tried to a jury. At the conclusion of all of the evidence each defendant made a motion for a directed verdict in his favor as to each plaintiff.

The Court overruled the motions and submitted the case to the jury. The jury was unable to reach a verdict and a mistrial was declared.

Each defendant, pursuant to Rule 50(b) of Federal Rules of Civil Procedure, within 10 days after the jury was discharged, moved for judgment in accordance with his motion for directed verdict—and each of those motions is now under consideration by the Court.

There can be no question as to the propriety of the procedure adopted by each of the defendants. In addition to following the letter of the law as set forth in Rule 50(b) the exact procedure was approved by the Court of Appeals for the 8th Circuit in the case of Watkins v. Oaklawn, 183 F.2d 440 in affirming (D.C.) 86 F.Supp. 1006, a case decided by Hon. John E. Miller in 1949.

The mechanism that makes Rule 50(b) constitutionally valid is the provision that "whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion," and it will be deemed to have reserved decision even if it has denied the motion. Lowden v. Denton, (8th Cir. 1940) 110 F.2d 274, cert. denied 310 U.S. 652, 60 S.Ct. 1100, 84 L.Ed. 1417.

■ It has been held that the Court may not order a new trial until the par-ties who had moved for a directed verdict have the opportunity this 10 day period provides them in which to move for judgment. Grace Lines, Inc. v. Motley (2nd Cir. 1971) 439 F.2d 1028.

■ Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the Court.

■ In the 8th Circuit a scintilla of evidence is not enough. The question is not whether there is literally no evidence but whether there is evidence upon which the jury could properly find a verdict for that party.

■ It is not for the Court to weigh the evidence or pass on the credibility of witnesses; and the Court must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

Following and observing these guidelines we come to a consideration of the evidence in the cases at bar.

The evidence clearly shows that the young ladies were expelled from school pursuant to declared school policy which had been in force for several years after they frankly confessed to "spiking the punch" with two bottles of "Right Time", a malt liquor.

It is fair to say that both plaintiffs and their attorney concede that they put the malt liquor in the punch intentionally.

The plaintiffs themselves concede that they violated the school policy, but that suspension for the remainder of the semester was too severe a penalty.

The attorney for the plaintiffs ably argued and urged that in spite of what his clients said, there was actually no violation of the policy because the alcoholic content of "Right Time" is so low that it does not and did not constitute a violation of the school policy.

■ Irregardless of the soundness of such a contention it is Arkansas law that the directors of any school district may suspend any pupil for conduct that

would tend to impair the discipline of the school. No school director is liable in damages for any decision or action made or taken in good faith.

In the cases at bar the Court instructed the jury that in order to find for any plaintiff against any defendant, the jury must find that he, she or it acted with malice toward the plaintiff.

The Court further stated that malice means ill will against a person—a wrongful act done intentionally without just cause or excuse. (Page 18 of Court's Instruction.) The Court also declared:

*(Page 22)*

You are instructed that the Mena School Board had the right to promulgate as a part of its statement of policy the declaration concerning intoxicants; and the matter of the reasonableness or unreasonableness of this declared policy is not properly in question in this case.

Furthermore, the School Board members had the right to enforce the same.

You are instructed that the teachers and school administrators had the right to enforce the school policy.

*(Page 23)*

In making penalty decisions concerning an alleged infraction of declared school policy such as the policy against bringing intoxicants on school premises, no teacher, administrator, school board member or school district will be liable for any action taken or decision made if his, her or its action or decision was in good faith; and this non-liability exists even if the action or decision actually taken or made was in truth incorrect; so, if you find that any defendant acted in good faith as regards the matters at issue in this case, then your verdict will be in favor of that defendant.

*(Page 25)*

If you find that in fact the malt liquor "Right Time" is not and was not an intoxicant as that term is used in the declaration of Mena School policy; but you find that the plaintiffs and the school authorities in good faith considered it to be, then you are instructed

that the good faith of a particular defendant in discharge of duties as a school board member or school administrator is a full and complete defense in this case as to that particular defendant.

The intelligence and quality of judgment of each of the defendants is not in issue in these cases, and

It is a well known fact that hindsight is often better than foresight, so

If you find from a preponderance of the evidence that an incorrect decision was made by any defendant in this case, the fact that the decision is incorrect or that a more sensible or more intelligent decision would have been desirable is not completely controlling, and

If you find that the particular defendant was acting in good faith, then the good faith of the defendant is a total defense in this case."

Plaintiffs have made much complaint that the Court in its instructions points out that "malice" must be proved before a defendant in this case can be held liable in damages. Each plaintiff finds equal fault with the Court's instructions that "good faith" is a complete defense.

We point out that the real question at issue here is whether or not responsibility in damages can be assessed against either a school district, a school administrative officer or a school board member in a very narrow field and that is the field of his, her or its exercise of discretion in expelling a pupil for violation of a prescribed school policy already found acceptable by rule and order of this Court.

By its instructions the Court has said that no defendant is liable for judgment made or policies enforced in the usual and orderly conduct of school affairs if the particular defendant has decided, judged and acted in good faith, i. e., without malice toward a plaintiff.

A great deal of plaintiffs' brief has been devoted to a scholarly discussion concerning the protection of a civil right to attend school and the rules and remedies should that civil right be violated.

That is not and never has been an issue in this case.

Here, each plaintiff was enrolled in school.

Here, the school had a policy requiring suspension from attendance when a child violated the policy concerning intoxicants. A full scale hearing was conducted concerning the question of whether or not the policy adopted by the Mena school was a proper exercise of authority by that school board. This Court held that the policy was constitutionally permissible if applied equally to all pupils, which is to say, "if it is constitutionally and fairly enforced."

In the findings of the Court on March 7, 1972 there appears the following language:

"This is an application for a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure under which a temporary restraining order could be issued if there is immediate danger of, as we say, an irreparable injury or immediate injury, loss or damage, which would happen before a trial could be had on its merits. That puts the burden on Mr. Core and his clients to show such a situation. At this time we are dealing with a case where two young ladies are required to attend school and the school has passed regulations which the school has the burden of showing it had a right to promulgate. It will be the finding of this Court that *the School Board not only had the right but did promulgate a Code of Regulations,* if you want to call it that, or a manual that provided that pupils found to be guilty of any of the following shall be suspended from school on the first offense for the balance of the semester and such suspension will be noted on the permanent record of the student along with reason for suspension. Item Four under that listed the use of intoxicating beverages or possession of same at school or at a school-sponsored activity. The Court finds that *the school had the right to adopt that rule; they did adopt that rule, and the School Board had reasonable grounds to believe that that rule had been violated at the time it took its initial action in this case.* Consequently the temporary application—the application for temporary restraining order will be overruled, denied." (Emphasis added.)

■ We point out that the right of a school district to make reasonable rules has been plainly declared in the 8th Circuit.

In the case of Esteban v. Central Missouri State College (8th Cir. 1969) 415 F.2d 1077, Judge Blackmun (now Justice Blackmun), speaking for a divided Court, but announcing the majority opinion stated: (Beginning on p. 1088)

"We agree with those courts which have held that a school has inherent authority to maintain order and to discipline students. State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822, 827 (1942) cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703; Jones v. State Bd. of Educ., 279 F.Supp. 190, 202 (M.D.Tenn.1968), aff'd 407 F.2d 834 (6 Cir. 1969); Buttny v. Smiley, 281 F.Supp. 280, 285, 286 (D.Colo.1968); Zanders v. Louisiana State Bd. of Educ., 281 F. Supp. 747, 757 (W.D.La.1968); Barker v. Hardway, supra, (D.C.) 283 F. Supp. 228 at 235. We further agree that a school has latitude and discretion in its formulation of rules and regulations and of general standards of conduct. Goldberg v. Regents of University of Cal., 248 Cal.App.2d 867, 57 Cal.Rptr. 463, 472 (Ct.App. 1967); Dickey v. Alabama State Bd. of Educ., 273 F.Supp. 613, 618 (M.D. Ala.1967); Jones v. State Bd. of Educ., supra; Buttny v. Smiley, supra; Cornette v. Aldridge, 408 S.W.2d 935, 941 (Tex.Civ.App.1966)."

and continuing on pages 1089–1090:

"Let there be no misunderstanding as to our precise holding. We do not hold that any college regulation, however loosely framed, is necessarily valid. We do not hold that a school has

the authority to require a student to discard any constitutional right when he matriculates. We do hold that a college has the inherent power to promulgate rules and regulations; that it has the inherent power properly to discipline; that it has power appropriately to protect itself and its property; that it may expect that its students adhere to generally accepted standards of conduct; that, as to these, flexibility and elbow room are to be preferred over specificity; that procedural due process must be afforded (as Judge Hunter by his first opinion here specifically required) by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures; that school regulations are not to be measured by the standards which prevail for the criminal law and for criminal procedure; and that the court should interfere only where there is a clear case of constitutional infringement.

After all, the test, we feel, is that of reasonableness. Dickey v. Alabama State Bd. of Educ., supra, 273 F.Supp. at 618. On that standard we perceive here no denial of constitutional rights of Esteban or of Roberds. If these two plaintiffs are really serious in what is said to be their protestations of desire to complete their college education, we naturally assume that they will apply for readmission. We are mildly surprised that they have not done this as yet. We also assume, of course, that the College will view their applications, if and when they are ever submitted, with the respect and deferences to which they are entitled. Affirmed."

Here, each plaintiff admitted a violation of the policy.

The able attorney for the plaintiffs contended that there was no violation because "Right Time" was of low alcoholic content; but the expelled students and their parents did not advance such a theory. They merely contended that the penalty was too severe when applied to their child.

The Court, in its instructions pointed out that no defendant could be liable in damages except if in the expelling process, a defendant's action, was the result of "malice" toward the plaintiffs or either of them.

This freedom in the exercise of judgment is as necessary in the administration of a public school's discipline as the freedom of the judiciary is in matters that require exercise of independent judgment in courts of law. So long as the exercise of independent judgment is free of "malice" and/or is an action in good faith, there can be no action for damages.

Perhaps we should say that while each plaintiff had a right to enroll in the Mena School, neither plaintiff had a right to escape being suspended from school after a demonstrated infraction of the school rules. Each plaintiff had a civil right to enroll. Neither had a civil right to violate the rules by "spiking the punch" and each plaintiff having become an offender was subject to the school discipline of being suspended.

■ Damages against a school district, a school administrator or a school board member should never be permitted unless they result from a malicious motive and action.

School personnel engaged in operating a school system are, by the very nature of their work, engaged in guiding the conduct of pupils entrusted to their care. The representative system of our country has been utilized to select the school personnel for that very purpose. To discharge their required duties they must make decisions and judgments. Only if they act with malice can they be held to answer in damages. When a dissatisfied patron finds fault he must meet that high standard of proof before he can recover damages.

In the case of Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153 at p. 1161 (1969), cert. denied 396 U.S. 843, 90 S.

Ct. 61, 24 L.Ed.2d 93, Judge Gibson used the following language:

"We do not think it within the province of the federal court to pass upon and decide the merits of all of the internal operative decisions of a school district. However, even if we were to pass upon the merits of this issue, we do not think that we could say that the Board was capricious or arbitrary in its attempt to resolve this internal dispute between the teachers and the principal of the school. There must be some degree of harmonious cooperation in school administration to insure an efficient use of public funds and a reasonably satisfactory school program. School boards are representatives of the people, and should have wide latitude and discretion in the operation of the school district, including employment and rehiring practices. Local autonomy must be maintained to allow continued democratic control of education as a primary state function, subject only to clearly enunciated legal and constitutional restrictions."

At common law a qualified immunity was given to school authorities in matters in which the authorities are authorized to act and in which they have the right of decision.

47 Am.Jur. Schools, Section 187, p. 433 is as follows:

"REMEDIES FOR WRONGFUL EXCLUSION—Although a teacher who rightfully expels or suspends a pupil cannot be compelled to reinstate him, where school authorities maliciously, arbitrarily, or without reasonable cause expel or suspend a pupil, an injury is done which the law will redress by mandamus to compel admission or reinstatement in the school, by a mandatory injunction, or by an action for damages. Express statutory authority to suspend or expel does not alter the relative rights and duties of school authorities and pupils. Such statutes merely expressly give to the authorities the power already inherent in them, and leave it subject to the same limitations.

The gist of an action for wrongful expulsion or suspension is malice; therefore, there can be no recovery where the expulsion or suspension is the result of an error by judgment by the school authorities, where they act without malice, in good faith, and in the line of what they honestly believe to be their duty. And even where a school board has acted with malice, authority exists for the view that their actions are to be likened to those of judicial officers, who are immune from liability when acting within their jurisdiction. Unless he has sustained some direct pecuniary injury thereby it is generally held that a parent has no right to sue for damages for the unlawful expulsion or suspension of his child, since it is the child, rather than the parent, on whom the deprivation falls."

.    .    .    .    .    .

The rule of qualified immunity of school authorities is stated in an annotation in 42 A.L.R. 763 as follows:

"The authorities of a school are not personally liable to a pupil for expelling or suspending him from school, when they act without malice, and in good faith, and in the line of what they honestly believe to be their duty."

In Arkansas the immunity is a qualified one by decision law and an absolute immunity by statute. In Douglass v. Campbell, 89 Ark. 254, 116 S.W. 211 (1909), the Court stated the qualified immunity of teachers and school board in the suspension and expulsion of pupils, as follows:

"It will be presumed that the teacher and the board have the best interests of the school at heart, and that they have acted in good faith in exercising the authority with which the law has clothed them. The burden is upon him who calls in question their conduct to show that they have not

been actuated by proper motives. But if the teacher and board should through malice, arbitrarily and without reason, suspend a pupil from school, the pupil would have his remedy, as we have before mentioned, and the parent also would have his remedy if he has sustained any pecuniary injury by reason of such illegal suspension."

Arkansas, by statute announced the State policy as follows:

Ark.Stat. 80–1812. Directors Exempt from Liability.—

"It is hereby declared that the directors of all school districts and special school districts in this state in the discharge of their duties as such directors act in a necessary governmental function. Therefore, no action for personal injuries or damage to property arising out of the acts, conduct, or omissions of such directors in their official capacities shall hereafter be brought or maintained in this state against such directors personally."

But it is not the Arkansas statute alone which confers immunity because immunity was created by the common law and case law as well as by statutes. The Federal Courts have balanced the compelling interest of the various affected parties in school civil rights cases and have adopted the qualified immunity doctrine and have applied it to school civil rights cases.

Gouge v. Joint School District No. 1, 310 F.Supp. 984 (D.C.Wis.) involved an action by terminated teachers against members of the board of the school district for compensatory and punitive damage. This was an action under the Civil Rights Act. In his opinion Judge Doyle stated:

"Defendants contend that all of them are entitled to dismissal of the entire action on the basis of common law immunity.

(3) This contention is clearly without merit with respect to the equitable relief sought here, namely, reinstatement. The purpose of common law immunity enjoyed by the judiciary and legislature, here sought to be extended to school boards and administrators, is to preserve the integrity and independence of those bodies, and to insure that judges and legislatures will act on their free, unbiased convictions, uninfluenced by any apprehensions of consequences. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. den., 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457; Kenney v. Fox, 232 F.2d 288 (6th Cir. 1956), cert. den., Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66.

Such considerations do not support granting immunity to school boards and administrators against actions seeking the type of equitable relief reflected in an order of reinstatement.

With respect to common law immunity from the plaintiffs' claims for damages, the situation is different. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court held, in an action for damages only, that a policeman was excused from liability under 42 U.S.C. § 1983 when acting in good faith under a statute which he reasonably believed valid, but which was later held unconstitutional. In McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968) the Seventh Circuit applied the Pierson doctrine to an alleged factual situation somewhat similar to the present cases. In McLaughlin, two probationary teachers brought an action for damages only, under 42 U.S.C. § 1983, against the Superintendent of Cook County, Illinois, School District No. 149 and the members of the Board of Education of that District. The complaint alleged that plaintiff Steele had not been rehired and plaintiff McLaughlin had been dismissed because of their association with a union. On a motion to dismiss, in deciding the

defendants' contention that they enjoyed immunity under both Illinois statute and the common law, the court stated:

"Legislators and judges have broad immunity under Section 1983 because in enacting that statute Congress did not intend to overturn their pre-existing defense. Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L. Ed. 1019; Pierson v. Ray, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed. 2d 288. However, other officials, such as present defendants, retain only a qualified immunity, dependent on good faith action. Pierson v. Ray, supra, at p. 555, 87 S.Ct. 1213; . . . ."

In Schreiber v. Joint School District No. 1, 335 F.Supp. 745 (D.C.Wis.) the Court stated:

"Nor is the doctrine of common law immunity an absolute bar to the granting of legal relief but rather merely a partial bar, dependent on good faith action. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed. 2d 288 (1967); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968).

In McDonough v. Kelly et al., 329 F. Supp. 144 (D.C.N.H.1971) in denying the claim for damages the Court applied the good faith doctrine in these words:

"There are two obstacles to the recovery of damages by the plaintiff both of his own making. The first obstacle is procedural. The plaintiff has chosen to sue the members of the School Board individually. No suit has been brought against the School District or the City of Manchester. While the very procedure of Dr. Lianos considering the plaintiff's case and voting on it without attending the hearing is shocking to one trained in the law, it does not constitute such bad faith as to render him, and the other School Board members individually, liable in damages. In fact, it must be found that even though the dismissal was constitutionally impermissible and violative of due process, it was done in good faith. See Gouge v. Joint School District, 310 F.Supp. 984, 990 (W.D.Wisc.1970). Further, it would be unfair to make those members of the Board who voted against dismissing the plaintiff respond in damages." . . .

And in Barker v. Hardway, 283 F. Supp. 228 (D.C.West Va. 1968) the Court stated:

"And it may be noted in passing that the law indulges the presumption that school authorities act reasonably and fairly and in good faith in exercising the authority with which it clothes them, and casts the burden on him who calls their conduct into question to show that they have not been actuated by proper motives. 47 Am. Jur.2d (Schools) Sec. 188 p. 435."

This case involves the qualified immunity for school authorities acting within the scope of their authority and in the performance of their official duties.

The Court has carefully reviewed the entire evidence in the case and finds as a matter of law no evidence from which any malice toward a plaintiff can be found or inferred. In fact no witness ever attempted to say that any defendant acted maliciously.

The close question, if there is one at all, is whether or not the school policy, as adopted and maintained, plus the enforcement thereof, created a situation from which malice could be inferred.

The Court instructed that the Board had the right to promulgate the policy concerning intoxicants and the evidence disclosed no unconstitutional enforcement of the rule, hence the combination of circumstances could not and did not justify an inference of malice.

The plaintiffs attempted to attack the good faith of the various defendants on the ground that the policy itself provided too severe a penalty for a childish

prank; but in no respect was the good faith of the defendants more clearly displayed than when the President of the school board pointed out that it was the "principle" that the board was enforcing.

Furthermore, the Court instructed at page 25 of its instructions as heretofore shown that the quality of the judgment and the intelligence of each defendant is not and was not at issue in this case. The action of a defendant would have to be a wrongful act done intentionally without just cause, and even then the good faith of a defendant is a complete defense.

■ Consequently, the fact that the school policy may be severe cannot be made the basis of an action unless malice is shown.

Actually, if the school patrons of Mena wanted different school directors they had and have the election process available to them—and they should always exercise their franchise with prudence because the judgment of a director is not open to question unless malice is shown.

Perhaps specific comment should be directed to the cases of the two school administrators who had no voice in making the school policy, but by virtue of their positions were required to enforce it.

■ And some reference should be made to the fact that a school district is by its nature incapable of malice.

But since the Court finds no evidence of malice on the part of any defendant and no circumstances or set of circumstances from which malice of any defendant can be inferred, the Court merely notes that the school administrators and the school district itself had more defenses than the other defendants, but that a verdict should be directed in favor of each and all of the defendants.

The Clerk will prepare and enter a judgment in accordance with the motion of each defendant for a directed verdict as to the claims of each plaintiff and the costs will be adjudged against the plaintiffs.