485 F.2d 186
 Peggy STRICKLAND, a minor, by Mr. and Mrs. Virgil Justice,
her parents and next friends; Virginia Crain, a
minor, by Doris Crain, her mother and
next friend, Appellants,
v.
S. L. INLOW et al., Appellees.
 No. 72-1774.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1973.
Decided Aug. 29, 1973.
Rehearing Denied Sept. 27, 1973.
Rehearing En Banc Denied Oct. 18, 1973.
 
 Ben Core, Fort Smith, Ark., for appellants.
 Eugene R. Warren, Little Rock, Ark., and Joe H. Hardegree, Mena, Ark., for appellees.
 Before GIBSON, HEANEY and ROSS, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 We are concerned on this appeal with the propriety of District Court action denying relief to two high school students who were given lengthy suspensions from school for allegedly violating school regulations with respect to the possession and use of intoxicating liquors at a school function on school premises.
 
 
 2
 Peggy Strickland, Virginia Crain and Jo Wall were tenth grade students at Mena High School, Mena, Arkansas, when this controversy arose. On February 18, 1972, the three girls were accompanied to the principal's office by Mrs. Curtis Powell, a home economics teacher, where they volunteered to Mr. Waller that they had "spiked" the punch at a recent extracurricular home economics class function. They related to him, through Mrs. Powell that on the day of the spiking incident, someone (it is not clear who) suggested that the punch be spiked. The three girls obtained permission to leave the campus and traveled to a tavern in Oklahoma where Jo Wall purchased two 12-ounce bottles of a flavored malt beverage, "Right Time." The three students then purchased six 10-ounce containers of a soft drink and combined the total eighty-four ounces of liquid in a milk carton, and returned with the mixture to school. To the liquid was then added enough water to total one and one-half gallons of punch, which was served at the gathering.
 
 
 3
 A disciplinary regulation of the Mena Special School District provides:
 
 
 4
 "3. Suspension
 
 
 5
 ******
 
 
 6
 * * *
 
 
 7
 "b. Valid cause for suspension from school on first offense:
 
 
 8
 "Pupils found to be guilty of any of the following shall be suspended from school on the first offense for the balance of the semester and such suspension will be noted on the permanent record of the student along with reason for suspension.
 
 
 9
 ******
 
 
 10
 * * *
 
 
 11
 "(4) The use of intoxicating beverages or possession of same or at a school sponsored activity."
 
 
 12
 Pursuant to this regulation, Principal Waller suspended the three girls from classes and extracurricular activity for one week, and told them that ultimate disposition would be in the hands of the School Board. He added, however, that he and Mrs. Powell would intercede for them and ask for leniency.
 
 
 13
 Without adequate notice to the students and with no notice to their parents, a special meeting of the School Board was held the night of February 18 to consider the matter. The only people in attendance were the members of the Board, Mr. Inlow, Mr. Waller and Mrs. Powell. Mrs. Powell relayed the girls' statements to the Board and she, along with Mr. Waller, recommended leniency. Shortly after these recommendations were made, a telephone call was received by Mr. Inlow. The caller was Mrs. Powell's husband, also a teacher at the school. He informed Mr. Inlow that he (Powell) had been told that Jo Wall had been involved in an altercation with another student after a basketball game that evening. Mr. Inlow then informed the Board of the substance of his conversation with Powell, leaving out the name of the student involved. With this, Mrs. Powell and Principal Waller withdrew their recommendations and "washed their hands" of the matter. The Board voted to suspend all three students for the balance of the semester.[1]
 
 
 14
 The School Board considered the matter for a second time on March 2, 1972. Present at this meeting were the members of the Board, Mr. Inlow, the appellants, their parents and counsel for the appellants and appellees. Neither Mr. Waller nor Mrs. Powell, the only two who had testified at the February 18 meeting, was present, although they were in their respective offices in the building during this time. The Board presented a written statement, which it described as a statement of facts found by it.[2] The students related their story to the Board and offered their apologies. The Board voted to uphold the suspension, and the hearing ended.
 
 
 15
 Thereafter, two of the students- Strickland and Crain-commenced an action in United States District Court under 42 U.S.C. Sec. 1983. They alleged that they had been deprived of the right to attend school without benefit of due process. They asked that they be reinstated, that the defendants be enjoined from imposing sanctions, and that the rule with respect to intoxicants be declared invalid and void. After an evidentiary hearing on a motion for a preliminary injunction, the District Court urged the appellees to reinstate the students, but refused to order the Board to take such action, apparently on the grounds that the students had not made an adequate showing of irreparable injury and had failed to convince the court that they were likely to prevail on the merits.
 
 
 16
 The students subsequently amended their complaint, adding a prayer for damages. The matter was then tried to a jury. The defendants moved for a directed verdict, apparently at the close of the plaintiffs' case. This motion was denied. After the jury failed to reach a verdict, the court declared a mistrial. The court subsequently granted the defendants' motions for judgment in accordance with their motions for a directed verdict and denied the plaintiffs' motion for a new trial.[3]
 
 
 17
 The students contend on appeal that the trial court erred: in denying them equitable relief; in failing to declare the rule with respect to the possession or use of intoxicating beverages invalid; in erroneously instructing the jury with respect to good faith as a defense; and in refusing to grant the students a new trial.
 
 
 18
 The law with respect to the rights of students is still developing. We think it is clear, however, that the following general principles are reasonably well established. The responsibility for public education is primarily the concern of the states. The exercise of this responsibility, however, must be consistent with federal constitutional requirements.[4] School boards have the right to adopt reasonable rules and regulations governing the conduct of high school students[5] and regulations proscribing the possession or consumption of intoxicating beverages by students at school functions are reasonable. Students cannot, however, be given lengthy suspensions for violating valid rules without being accorded substantive and procedural due process. If they are given such a suspension without the benefit of due process, they may bring a Sec. 1983 action for declaratory and injunctive relief against the school district, the school board and those administrators involved in the decision.[6] They may also bring an action for damages against the individual members of the board and the administrators of the school system who participated in the decision.[7] Good faith is a defense in damage actions, but not in actions for equitable relief.[8] With these general principles in mind, we turn to the issues raised here.
 
 
 19
 We believe that the regulation which prohibits the possession or consumption of intoxicants by Mena High School students at school or at a school function is reasonable.[9]
 
 
 20
 We hold that the suspensions for the balance of the semester imposed by the Board were severe enough to require that due process be afforded the affected students. They resulted in the girls effectively losing nearly a full year's credits.
 
 
 21
 We think it clear that the students were denied procedural due process at the February 18 meeting of the Board. Their parents were not notified of the meeting, and were not given an opportunity to appear at it. We recognize that the March 2 meeting may have cured the procedural defects because it was held promptly after the suspension, and because the students and their parents were given notice of the time and place of the meeting and were given an opportunity to present evidence.[10] But we need not decide whether, in fact, the meeting did so because the students were denied substantive due process at both meetings.
 
 
 22
 To justify the suspension, it was necessary for the Board to establish that the students possessed or used an "intoxicating" beverage at a school-sponsored activity. No evidence was presented at either meeting to establish the alcoholic content of the liquid brought to the campus. Moreover, the Board made no finding that the liquid was intoxicating. The only evidence as to the nature of the drink was that supplied by the girls, and it is clear that they did not know whether the beverage was intoxicating or not. The District Court recognized this void in its March 7 findings of fact. It stated:
 
 
 23
 "I have had grave questions throughout this trial as to whether this concoction from which these students got such a terrific charge was ever an intoxicating beverage. * * * [T]he term 'intoxicating beverage' as used in the manual is not defined but the term 'intoxicating liquid' is certainly well defined under the Arkansas laws and it provides that it must be a content in excess of 3.2 or 5 percent by weight and I am afraid the School Board is or has made a mistake here but I do not see any constitutional thing within the jurisdiction of this Court that requires any intervention by the Court at this time on the temporary application. If it ever reaches the matter of proof on the intoxicating angle I don't think you will ever be able to prove that thing there- in spite of the fact that these little girls giggled around and got themselves kicked out of school on such a silly thing- I don't think you will ever be able to prove that that stuff is intoxicating."
 
 
 24
 For reasons not apparent from the record before us, the court failed to discuss this absence of evidence in its final opinion and made no finding that the School Board had determined that the beverage brought to the school by the girls was intoxicating. Under these circumstances, we have no alternative but to find that the students were denied substantive due process and that they were entitled to have their records cleared and to be reinstated. As reinstatement is no longer possible, the students are entitled to have their records cleared and to be relieved of any punishments that may be of a continuing nature.
 
 
 25
 Lest we be misunderstood, we make it clear that the School District can prohibit the use and possession of any alcoholic beverages if it desires, or it may continue its present policy and bar intoxicating beverages only.
 
 
 26
 We turn then to the question of whether the trial court properly directed a verdict against the students as to their claim for damages as against all defendants.
 
 
 27
 The directed verdict was appropriate as to the School District because under the doctrine of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), a school district is immune from damages in a Sec. 1983 action.[11]
 
 
 28
 It was appropriate as to Superintendent Inlow and Principal Waller because there is no evidence in the record to support a claim against them. Neither had a vote in the suspension proceedings and neither recommended that the girls be suspended.
 
 
 29
 It was inappropriate as to the individual School Board members because the record shows clearly that the plaintiffs established that they had been suspended without regard to substantive due process and the defense of good faith was not established as a matter of law. Moreover, the court took an erroneous view of the law. It instructed the jury that the plaintiffs had to prove that the defendants acted with malice toward the plaintiffs. No such specific intent need be proved to recover compensatory damages. It need only be established that the defendants did not, in the light of all the circumstances, act in good faith. The test is an objective, rather than a subjective, one.[12] The appellants must accordingly be given a new trial on the issue of damages with respect to the defendant School Board members.
 
 
 30
 We remand to the District Court for action consistent with this opinion. An attorney's fee in the sum of $500.00 is awarded to counsel for the appellants. Costs will be taxed against all appellees except S. L. Inlow, Duddy Waller, and Mena Special School District.
 
 ON PETITION FOR REHEARING
 
 31
 MEHAFFY, Chief Judge, joined by STEPHENSON and WEBSTER, Circuit Judges, dissenting from denial of the petition for rehearing en banc.
 
 
 32
 The appellees in this case have filed a petition pursuant to Fed.R.App.P. 40 for a rehearing with suggestion for a rehearing en banc. The Arkansas School Boards Association has joined as amicus curiae in support of the appellees' petition. After an examination of the panel's opinion in this case and of the abovementioned petitions I voted to grant a rehearing en banc. Although a majority of the active judges of this court voted to deny appellees' petition, I feel compelled to respectfully dissent from the denial of the petition for rehearing en banc.
 
 
 33
 My principal disagreement with the panel's opinion involves its use of substantive due process as the basis for reversal. I fully recognize that a public high school student has a very strong interest in his or her education. I also recognize that the student's interest in public education enjoys very important procedural and substantive federal constitutional protection from certain types of unwarranted state action. I cannot agree, however, with the panel's conclusion that the due process clause of the fourteenth amendment empowers this or any other federal court to review every public school disciplinary action on the basis of sufficiency of the evidence. Instead, I am firmly convinced that the substantive reach of the due process clause on the public school campus is limited to the protection of specifically identifiable federal constitutional rights.
 
 
 34
 This is not a case where the school board has invaded federally protected areas of speech, association, religion, or equality of race or sex. Nor is this a case where the procedure accorded the students was inadequate, unreasonable, or unfair. Instead, as the panel itself concludes, this is a case where the school board had established a reasonable rule, the students had notice of the rule, the students by their own admission had violated the rule, and, after full procedural protection was afforded, the rule was enforced. Under such circumstances I fail to perceive any federal constitutional question in appellants' attack.
 
 
 35
 I am, of course, aware that "substantive due process" has in the past been used without regard to any specific constitutional safeguard to attack a wide variety of state action. E. g., Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905); Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915). But I thought the federal judiciary had long since rejected such a freewheeling use of "substantive due process" because it inevitably had led to an unwarranted invasion of the duties and responsibilities of state and local governments. E. g., Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). None of the cases cited by the panel supports such an unfettered reading of the due process clause; instead, all of the cases involved attacks either on the procedure accorded or on an alleged invasion of some specifically protected right such as free speech. I fear that the panel's opinion now places every federal court, at least in this circuit, in the position of serving as a board of appeal for every disciplined public school student who feels that his punishment was too severe or that the school board's decision was not supported by substantial evidence. I feel that this function is one that is the sole responsibility of the state and local governments, which in this case have long provided an appropriate judicial remedy. E. g., Douglas v. Campbell, 89 Ark. 254, 116 S.W. 211 (1909).
 
 
 
 [1]
 The practical effect of the suspension was to cause the girls to fail their entire sophomore year. It will be possible for them to graduate with their class, but they must complete three academic years in two by taking an increased course load during their final two years in school
 
 
 [2]
 "FACTS FOUND BY SCHOOL BOARD "1. That Virginia Crain, Peggy Strickland and Jo Wall are students of Mena High School and subject to the governing rules and policies of Mena High School
 "2. That on or about Feburary 7, 1972 these three girls were charged with the responsibility of providing refreshments for a school function, being a gathering of students of the Home Economic class and some of their parents, on school premises, being the auditorium building of Mena High School, and being under the direction of Mrs. Curtis Powell.
 "3. That the three girls in question traveled to Oklahoma, purchased a number of bottles of malt liquor, a beer type beverage, and later went onto school premises with the alcoholic beverage and put two or more of the bottles of the drink into the punch or liquid refreshment which was to be served to members of the class and parents."
 
 
 [3]
 The opinion of the trial court is published at 348 F.Supp. 244 (W.D.Ark.1972)
 
 
 [4]
 Jones v. Snead, 431 F.2d 1115 (8th Cir. 1970)
 
 
 [5]
 Tate v. Board of Ed. of Jonesboro, Ark., Spec. Sch. Dist., 453 F.2d 975 (8th Cir. 1972); Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970)
 
 
 [6]
 Jones v. Snead, supra; Tate v. Board of Ed. of Jonesboro, Ark., Spec. Sch. Dist., supra; Farrell v. Joel, 437 F.2d 160 (2nd Cir. 1971); Esteban v. Central Missouri State College, supra; Wasson v. Trowbridge, 382 F.2d 807 (2nd Cir. 1967); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). See also, "Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education," 45 F.R.D. 133, 147 (W.D.Mo. 1968)
 
 
 [7]
 Gouge v. Joint School District No. 1, 310 F.Supp. 984 (W.D.Wis.1970)
 
 
 [8]
 Gouge v. Joint School District No. 1, supra. See, 2 T. Emerson, D. Haber & N. Dorsen, Political and Civil Rights in the United States (3rd ed. 1967)
 
 
 [9]
 Although the regulation seems to call for mandatory suspension for the balance of the semester and the "Administrative Policies" for the Mena Public Schools do not provide for a hearing in the event of expulsion or suspension, we need not discuss the appellants' challenge of the regulation on those grounds. The Board apparently did not view the regulation as restricting their actions, for they did hold a belated hearing and did consider imposing a less severe penalty
 
 
 [10]
 See, Pervis v. LaMarque Independent School District, 466 F.2d 1054 (5th Cir. 1972). In that case, the Court ruled that where students were suspended without a hearing for three months, a subsequent hearing did not cure the initial constitutional deprivation. The Court, in discussing the dangers inherent in the contrary view, states at 1058:
 "* * * How, then, could they have been made whole? They would have lost some 3 months of education. This result cannot obtain. Procedural due process must, on the facts present in this case, be given prior to imposition of serious suspensions."
 
 
 [11]
 We note here that an exception to the Monroe rule has been developed in that line of cases following Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). That Court held that claims for back pay by teachers are part of the equitable relief for reinstatement and not damages. See, United States of America v. Cotton Plant School District No. 1, et al., 479 F.2d 671 (8th Cir. 1973); Moore v. Board of Ed. of Chidester Sch. Dist. No. 59, Ark., 448 F.2d 709 (8th Cir. 1971)
 
 
 [12]
 McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Gouge v. Joint School District No. 1, supra. See generally, Wash.U.L. Qtly. 666 (1971); Weddle, Damages Under Sec. 1983: The School Context, - Ind.L.J. 521 (--)