519 F.2d 744
 Peggy STRICKLAND, a minor, by Mr. and Mrs. Virgil Justice,
her parents and next friends, and Virginia Crain,
a minor, by Doris Crain, her mother and
next friend, Appellants.
v.
S. L. INLOW, et al., Appellees.
 No. 72-1774.
 United States Court of Appeals,
Eighth Circuit.
 June 18, 1975.
 
 Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 This cause is before us on remand from the Supreme Court. When first considered, we held that Peggy Strickland and Virginia Crain had been suspended from school in violation of their right to substantive due process. Because the school year had ended, we directed their records expunged and the cause remanded for a determination of damages against the individual School Board members. We declined to rule on the plaintiffs' claim that they also had been denied their right to procedural due process. On appeal to the Supreme Court, the judgment of this Court was vacated and the cause remanded.[1] We now consider the previously undecided issue whether the right of Peggy Strickland and Virginia Crain to procedural due process was violated when they were given lengthy suspensions from Mena High School, Mena, Arkansas. We hold that the plaintiffs' right to procedural due process was violated and remand the cause to the District Court for further proceedings.
 
 
 2
 On February 18, 1972, the plaintiffs and a third girl, Jo Wall, admitted to the school principal, Mr. Waller, that they had violated school regulations by spiking the punch at an extracurricular home economics function.[2] The plaintiffs were then in the tenth grade, and neither had previously been subjected to disciplinary action.[3] Mr. Waller immediately suspended the girls from school and informed them that his decision was subject to ultimate disposition by the School Board. The girls were told that they could attend the Board meeting but were not given notice of its time or place. No notice was given the parents.[4] This summary procedure was employed even though the plaintiffs were subject to serious disciplinary action.[5] Further, there is no evidence in the record to suggest that the school was threatened with disorder because of the plaintiffs' actions.
 
 
 3
 The Board meeting was held the same evening. The members voted to suspend the girls for the balance of the semester. The Board's decision to impose the maximum penalty upon the plaintiffs was prompted by a telephone report from Mr. Powell, a teacher at the school, that the third girl, Jo Wall, had been involved in an altercation at a basketball game that evening. Mr. Powell's information was not based upon firsthand knowledge. The report was received by Superintendent Inlow who relayed it to the Board, omitting the name of the student involved. No attempt was made to verify the factual basis of the report. Based thereon, Mr. Waller and Mrs. Powell, also a teacher at the school, withdrew their recommendations of leniency and the Board voted.
 
 
 4
 The failure to inform the plaintiffs of the time and place of the Board meeting was violative of their right to procedural due process, for fundamental to that concept is adequate notice and the opportunity to be heard. Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975); Williams v. Dade County School, 441 F.2d 299, 301-302 (5th Cir. 1971); Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970). Here, the right of the plaintiffs to continue in school was determined ex parte.[6] Yet, even in the context of minor disciplinary action, the student has the right to be afforded an opportunity to present his side of the case. Goss v. Lopez, supra, 419 U.S. at 581, 95 S.Ct. at 740, 42 L.Ed.2d at 739. This opportunity to be heard is no less important when, as here, there is not a serious dispute over the factual basis of the charge, for
 
 
 5
 * * * things are not always as they seem to be, and the student will at least have the opportunity to characterize his conduct and put it in what he deems the proper context.
 
 
 6
 Id., 419 U.S. at 584, 95 S.Ct. at 741, 42 L.Ed.2d at 740.
 
 
 7
 The defendants make no attempt to justify the procedures employed at the first Board meeting but contend that a second meeting, held March 2, 1972, cured the prior procedural defects. We recognized, in our first opinion, the potential force of this contention but declined to reach its merits. The March 2nd meeting was held promptly after the suspensions and the students and their parents were given notice of its time and place and afforded the opportunity to present evidence.
 
 
 8
 This second meeting was, however, no more than a ratification of the prior Board decision and did not cure the prior violations of due process. There is no evidence in the record that the Board members considered their prior decision open to reconsideration. Indeed, the Board had, prior to the meeting, prepared its written statement of facts which was presented to the girls and their parents. At the second meeting, the plaintiffs were confronted with a fait accompli.
 
 
 9
 Moreover, even assuming that the Board openly considered the evidence presented by the plaintiffs, the hearing was necessarily truncated and incomplete. The Board's initial decision was based, at least in part, not on the infraction alleged but on the separate and unsubstantiated charge that Jo Wall had been involved in a fight at a basketball game. The plaintiffs were not given notice of this second charge. Ignorant of the scope of the matter under consideration, the plaintiffs' opportunity to present their side of the case was rendered meaningless. See Jones v. Snead, supra at 1117; Dixon v. Alabama State Board of Education, 294 F.2d 150, 159 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). They could not refute the factual basis of the Board's decision by showing their innocence of the additional wrongdoing. The Board's arbitrary decision that failed to distinguish between the conduct of the plaintiffs and Jo Wall went unchallenged. This arbitrary denial of the plaintiffs' right to education is forbidden under the Due Process Clause. See Goss v. Lopez, supra, 419 U.S. at 574, 95 S.Ct. at 736, 42 L.Ed.2d at 735; Farrell v. Joel, 437 F.2d 160, 163 (2nd Cir. 1971); Dixon v. Alabama State Board of Education, supra at 158; Cf., Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).
 
 
 10
 The plaintiffs are entitled to have their records cleared and to prove their claim of damages against the individual members of the School Board. The School Board members are, of course, immune from damages if their actions were taken in good faith, as defined by the Supreme Court in Wood v. Strickland, --- U.S. ---, ---, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975). On the basis of the record before us, we cannot say that the defense is proven as a matter of law. Accordingly, that factual issue must be determined by the District Court on the record made at the prior trial.
 
 
 11
 The cause is remanded to the District Court for further proceedings consistent with this opinion and the decision of the Supreme Court.
 
 
 12
 GIBSON, Chief Judge (dissenting in part).
 
 
 13
 I concur in the majority's holding on the procedural due process issue that the plaintiffs are entitled to have their records cleared. I respectfully dissent, however, from the remand to the District Court to determine whether the defense of good faith was proven as a matter of law. The record of the prior trial in this case does not support an action for damages against the individual members of the school board in view of their qualified immunity as clarified by the Supreme Court in Wood v. Strickland, --- U.S. ---, ---, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975).
 
 
 14
 The Supreme Court, contrary to this court's prior finding of a substantive due process violation, found "no absence of evidence before the school board to prove the charge against the respondents" (students) and remanded for us to consider the claimed procedural due process violation. --- U.S. at ---, 95 S.Ct. at 1002, 43 L.Ed.2d at 227. There is no doubt that procedural due process was lacking in the summary suspension of the students and the precipitous board meeting that same evening. The students were denied sufficient notice and an opportunity to appear. The subsequent board meeting two weeks later did provide adequate notice and opportunity to appear. The students, their parents, and counsel attended this latter board meeting. Although opportunity to present a meaningful explanation of the punch-spiking episode was lacking, as pointed out by the majority, this fact should not place the school board members under a continuing threat of monetary damages for every procedural error.
 
 
 15
 There is absolutely no evidence in the record of any "malicious intention to cause a deprivation of constitutional rights or other injury" to the students, a predicate for liability under the Supreme Court's decision in this case. The school board was merely enforcing its code of conduct. While I might view the suspension for the term as too severe a penalty for this childish prank, others well may differ. After all, the school board has the responsibility for maintaining an adequate level of discipline, a responsibility not entrusted to the federal courts. Any compensatory award here would be clearly inappropriate as there is not sufficient evidence for a jury to find that any "school board member has acted with such * * * disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith" or that any school board member "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or * * * took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." Wood v. Strickland, supra, --- U.S. at ---, 95 S.Ct. at 1001, 43 L.Ed.2d at 225.
 
 
 16
 Most school board members across the country receive little or no monetary compensation for their services. Theirs is truly a public service and they are entitled to be protected from tort liability for all good-faith non-malicious actions taken to fulfill their official duties. The important reasons for granting them qualified immunity were well stated for the Court by Mr. Justice White:
 
 
 17
 The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and the students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure.
 
 
 18
 Wood v. Strickland, supra, --- U.S. at ---, 95 S.Ct. at 999, 43 L.Ed.2d at 223-24 (footnote omitted).
 
 
 19
 I think facts consistent with that qualified immunity are present in this case and should be respected as a matter of law. I would remand to the District Court only for the limited purpose of ordering the students' records cleared and relieving them of any sanctions that may be of a continuing nature. Strickland v. Inlow, 485 F.2d 186, 190 (8th Cir. 1973).
 
 
 
 [1]
 The prior opinion of this Court is reported as Strickland v. Inlow, 485 F.2d 186 (8th Cir. 1973). The opinion of the Supreme Court is reported as Wood v. Strickland, --- U.S. ---, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)
 
 
 [2]
 The school regulations prohibited the possession or use of intoxicating liquors at school functions
 
 
 [3]
 The girls have subsequently graduated with their class. Wood v. Strickland, supra, --- U.S. at ---, 95 S.Ct. at 996, 43 L.Ed.2d at 220, n.5
 
 
 [4]
 Principal Waller, on cross-examination, testified to the notice given the girls:
 Q. Had not been invited, had they?
 A. The girls were told the Board meetings were always open and I told them that if the parents wanted to come to the Board they were welcome to come to the Board, that all Board meetings is always open. This was told those girls that afternoon.
 Q. Did you call the parents and tell them?
 A. No, sir, I did not call the parents and tell them because I did not know we were having a Board meeting, we got it arranged, I imagine, about 6:30 or 7:00 and the reason I worked to get the Board together was so they could act Friday night so that if they did show leniency in any that the girls could be back in school on Monday.
 
 
 [5]
 The school regulations directed mandatory suspension for the balance of the semester. The Board did not, however, view the regulation as restricting its power to impose a less severe penalty. See Strickland v. Inlow, supra at 189, n.9
 
 
 [6]
 The Supreme Court recently said:
 * * * But it would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his defalcation and to let him tell his side of the story in order to make sure than an injustice is not done. * * *
 Goss v. Lopez, supra, 419 U.S. at 580, 95 S.Ct. at 739, 42 L.Ed.2d at 738.