The Honorable James Scott State Senator Route 1, Box 82-A Warren, Arkansas 71671-9705
Dear Senator Scott:
This is in response to your request for an opinion on the two following questions:
 1) If a school official suspects child abuse, is it legally appropriate for the official to call the child's parents first?
 2) Does a school official need to get parental permission before allowing a social worker access to a child for the purpose of investigating possible child abuse?
In response to your first question, Arkansas statutes do not contemplate the contacting of the student's parents prior to reporting the suspected abuse. In response to your second question, I have attached a copy of Op. Att'y Gen. 91-417, which answers your question in the negative.
With regard to your first question, A.C.A. § 12-12-507 (b) provides that if a "teacher, school official [or] school counselor. . . . has reasonable cause to suspect that a child has been subjected to child maltreatment . . . he shall immediatelynotify central intake or law enforcement. . . ." (Emphasis added.) The statute requires "immediate" notification of the proper authorities and thus does not address or appear to authorize intervening contact with the child's parents.
With regard to your second question, as noted in Opinion 91-417, the relevant statute is A.C.A. § 12-12-510(a) which provides that "[t]he person conducting the investigation shall have the right to enter into or upon the home, school, or other place, for the purpose of conducting an interview or completing the investigation. . . ." If access or admission is denied, a petition may be filed with the juvenile division of chancery court to enforce the right of entrance for purposes of an interview. A.C.A. § 12-12-510(b). Upon a showing of good cause, a hearing may be held on the issue. A.C.A. § 12-12-510(c).
This statutory scheme does not require school officials to get the permission of the parents prior to granting social workers access to the child. These social workers have the right by statute to interview the child on school premises. A.C.A. § 12-12-510 (a).
It appears that the issue has arisen because at least some school officials have been advised by the attorney for the School Boards' Association to deny these social workers access to the child, and force the social worker to get a court order under A.C.A. 12-12-510(b) to enforce the right. It is the belief of such counsel that in this way the school officials would immunize themselves from potential liability to the child or parents under federal law.
It appears that school officials have the practical option, if not the legal right, to deny admittance to these social workers and force them to get a court order to gain access to the school to interview a child. The School Boards Association's counsel is of course free to advise the schools in any manner he sees fit. It is my opinion, however, that school officials, if they pursue this course, are unnecessarily impeding the swift and effective action often necessary to prevent the abuse of children, and may in fact be exposing themselves to liability rather than immunizing themselves from it, if a child is injured due to the delay occasioned by the denial. It is my opinion that school officials, absent malice or improper motives, will not suffer any liability solely as a result of allowing social workers access to a child for the purpose of investigating suspected child abuse.[1]
The primary focus of the concern of the School Boards Association lawyer appears to be liability under 42 U.S.C. § 1983. Although school officials may be subject in some instances to liability under 42 U.S.C. § 1983 for deprivations of constitutional and legal rights, these officials are also entitled in many instances to common law qualified immunity. See Strickland v. Inlow,519 F.2d 744 (8th Cir. 1975). In the situation noted above, in order to recover, a potential plaintiff would have to prove both that: 1) he or she was deprived of a constitutional or statutory right, and that 2) the school official in question was not entitled to qualified immunity. It is my opinion that in the situation described above, as long as statutory procedures are followed, a potential plaintiff could prove neither of these elements.
The primary constitutional rights advanced as posing potential liability are due process rights and the "right to privacy." The Eighth Circuit Court of Appeals has noted that:
 [t]he Supreme Court has recognized a liberty interest which parents and children have in the care and companionship of each other. . . . The right is not absolute, however. . . . The liberty interest in familial relations is limited by the compelling governmental interest in protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.
Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987) cert.denied, 484 U.S. 828 (1987). See also, Young v. ArkansasChildren's Hospital, 721 F. Supp. 197 (E.D. Ark. 1989).
The court went on to cite a case (in the substantive due process context) which stated that: "It does not shock our conscience or otherwise offend our judicial notions of fairness to hear that caseworkers responsible for an allegedly abused child arranged for the child to be examined by a psychologist and, after receiving confirmation of child abuse, reduced the parents' visitation rights. . . . Fitzgerald v. Williamson, 787 F.2d 403
(8th Cir. 1986). The court also cited Bohn v. County of Dakota,772 F.2d 1433 (8th Cir. 1985) cert. denied, 475 U.S. 1014
(1986), in the procedural due process context, which held that challenged procedures for contesting a child abuse determination were adequate to protect the parents' liberty interest in light of the government's strong interest in protecting powerless children who may be subject to abuse or neglect. The court also cited Daryl H. v. Coler, 801 F.2d 893 (7th Cir. 1986), and noted the "extraordinarily weighty" interests of the state in child abuse investigations, in relation to the right of privacy. Finally, it is stated in Doe, supra, n. 1, that "the state may intervene on behalf of abused children, thereby infringing upon a parent's liberty interest . . . if the state provides an adequate post deprivation hearing." 858 F.2d at 1329. Such a hearing is authorized at A.C.A. § 12-12-512(c)(2)(A).
Any procedural or substantive due process claim, or right of privacy claim of the parents, would therefore likely fail in light of the compelling interest of the state in protecting allegedly abused children.
In addition, even if a colorable constitutional violation could be shown, the school officials involved would be entitled to qualified immunity; that is, they would be immune from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). In a case precisely on point from the Seventh Circuit, the court rejected a § 1983 liability claim brought by the parents against a school teacher, the school principal, the school nurse and the school psychologist, who, with a social worker, and without parental permission, physically examined and interviewed a child taken from her classroom for purposes of discovering suspected sexual abuse. Landstrom v. Illinois Dept. of Children FamilyServices 892 F.2d 670 (7th Cir. 1990). The court framed the qualified immunity issue as being "whether minor school children suspected of being victims of child abuse had, [at the relevant time] a clearly established right to be free from questioning and visual examination of unexposed parts of their bodies of which state and local school employees reasonably should have known."892 F.2d at 675. The court found no such clearly established right, and found, therefore that the defendants were entitled to qualified immunity and were therefore not liable. Additionally the Eighth Circuit in Meyers, supra stated that "[i]n our view, the parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children."810 F.2d at 1463. The Landstrom court went so far as to note that qualified immunity had been "fashioned to protect public officers from the needless harassment and expense that can result from precisely the kind of meritless § 1983 claims brought by plaintiffs here." 892 F.2d at 680. See also generallyFraizer v. Bailey, 957 F.2d 920 (1st Cir. 1992).
It is therefore my opinion that absent malicious conduct or improper motives (see, e.g., Snell v. Tunnell, 920 F.2d 673
(10th Cir. 1990)), school officials will not be subject to § 1983 liability solely for admitting social workers to school grounds for the purpose of interviewing children to discover suspected child abuse. It is therefore unnecessary for school officials to force social workers to get a court order and delay what may be the critical need for investigation and intervention in child abuse cases.
Indeed, it may be suggested that the denial of access could result in § 1983 liability to a child who, because of the denial and ensuing delay, is subjected to great injury by the abuser in the intervening period. Such a cause of action would be based upon the denial of a statutory right — the right of the social worker to have access to the child for purposes of investigation (which right inures to and is granted for the benefit of the child). In my opinion this right, which is plainly granted by the statutes of this state, would come nearer being a "clearly established statutory right of which a reasonable person would have known," than the right of a parent who may be suspected of child abuse to consent to the interview of his or her child.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Of course if the school officials act maliciously, e.g.,
report suspected sexual abuse not based on reasonable cause to suspect, but for their own improper purposes, liability may result. See Doe v. Hennepin County, 858 F.2d 1325 (8th Cir. 1988).