**CINE–COM THEATRES EASTERN STATES, INC., Plaintiff,**

v.

**Joseph P. LORDI, Essex County Prosecutor and George F. Kugler, Jr., Attorney General of the State of New Jersey, Defendants.**

**Civ. A. No. 911–72.**

United States District Court,
D. New Jersey,
Civil Division.
Nov. 20, 1972.

Kassner & Detsky, New York City, for plaintiff; Philip Insabella, Newark, N. J., of counsel.

Joseph P. Lordi, by David S. Baime, Asst. Essex County Prosecutor, Newark, N. J., Alfred J. Luciani, Deputy Atty. Gen., East Orange, N. J., for defendants.

Before JAMES ROSEN, Circuit Judge, and BARLOW and GARTH, District Judges.

## OPINION

GARTH, District Judge:

This is an action challenging the Constitutionality of the New Jersey anti-obscenity statute, L.1971, c. 449 (eff. February 16, 1972) (codified at N.J.S. 2A:115–1.1 (Supp.1972)), repealing L. 1962, c. 165, § 1, as amended, L.1966, c. 199. Jurisdiction of the three-judge court is invoked under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2201, 2202, 2281 and 2284.

Plaintiff, a New York corporation, is the operator of the Royal Art Theatre located at 1077 Springfield Avenue, Irvington, New Jersey. Jerry Rasnick is the manager of the Royal Art Theatre. In September of 1971, Mr. Rasnick was arrested in connection with the exhibition of certain allegedly obscene films under N.J.S. 2A:115–2, pursuant to a definition of obscenity contained in L. 1962, c. 165, § 1, as amended, L.1966, c. 199, New Jersey's prior anti-obscenity law, which provided that a communication was obscene if it were established that:

"(1) The dominant theme of the material taken as a whole appeals to a prurient interest;

(2) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and

(3) The material is utterly without redeeming social value."

Although arrested under the preceding anti-obscenity statute, plaintiff pleaded guilty to a municipal ordinance violation. In March of 1972 Mr. Rasnick was again arrested for the exhibition of allegedly obscene films at the Royal Art Theatre, this time pleading guilty to a violation of N.J.S. 2A:130–3—"Maintaining nuisance a misdemeanor."

Effective February 16, 1972, the New Jersey Legislature amended the definition of obscenity in its anti-obscenity statute, N.J.S. 2A:115–1.1, so as to eliminate sub-section (3) of the definition set forth above. N.J.S. 2A:115–1.1 (Supp. 1972) now provides:

"The word 'obscene' wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest."

Thus, under New Jersey's present anti-obscenity statute, matter can be obscene even if it has some redeeming social value.

Plaintiff, contending that the elimination of the "social-value" test from the definition of obscenity in the present anti-obscenity statute renders any prosecution under that definition unconstitutional, seeks declaratory and injunctive relief against enforcement of the statute.

### I.

#### STANDING

This Court cannot entertain this action unless the plaintiff has the requisite standing and thus presents a justiciable case or controversy within Article III, Section 2 of the Constitution. Where declaratory relief is sought, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). See Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct.

956, 22 L.Ed.2d 113 (1969); Evers v. Dwyer, 358 U.S. 202, 203, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); YWCA v. Kugler, 342 F.Supp. 1048 (D.N.J.1972) (three-judge court).

In this case, plaintiff has been twice arrested for exhibiting allegedly obscene films—once under the predecessor statute of that under challenge and once on a charge of a statutory misdemeanor. Plaintiff alleges that the County prosecutor has represented that the new law will be enforced to its fullest extent. Plaintiff further alleges that he will continue to exhibit sexually-oriented adult pictures of the kind that has resulted in his arrests in the past, and thus he fears further arrests under the new statute.

As seen above, the new law differs from the old only in that it eliminates the "social-value" test—the requirement that published material be "utterly without redeeming social value" to be obscene. Thus, this new statute brings within its grasp all published material considered obscene under the prior law as well as material that previously would not have been obscene. The question presented as to standing is whether on these facts plaintiff has a sufficient adversary stake with respect to the statute to present "concrete legal issues, . . not 'abstractions.'" United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ The personal stake sufficient to warrant standing may be shown by the imminence of prosecution or harassment under the statute challenged. Where there is no threat of prosecution or danger of harassment, standing may be denied. Thus, in Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), three plaintiffs who never claimed that they had ever been "threatened with prosecution, that a prosecution [was] likely, or even that a prosecution was remotely likely," were denied standing to challenge ·California's criminal syndicalism law.[1]

The *Younger* holding on standing was recently reaffirmed by the Supreme Court in Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), in which standing was denied to complainants alleging a chilling of their First Amendment rights by virtue of the mere existence of a military investigative and data-gathering system. Chief Justice Berger, speaking for the majority in *Tatum*, recognized, however, the validity of standing in past cases[2] where complainants had shown a "chill" of their· First Amendment rights by the imminence of some governmental proscription of their allegedly protected conduct:

"[I]n each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging."

*Id.* at 11, 92 S.Ct. at 2324. By contrast, the complainants in *Tatum* failed to show that the alleged existence of a military surveillance system would, in itself, probably result in their arrests or in any other sanctions of their behavior.

■ In the case at hand, the plaintiff alleges that the record of his past arrests for the exhibition of sexually-oriented adult films of the kind he will continue to show and the representation that the State intends to enforce the new statute give rise to a strong enough likelihood that he will be prosecuted under the present statute to warrant stand-

---

1. *See also* Burak v. Sprague, 335 F.Supp. 347, 349 (E.D.Pa.1971), where standing was denied to a plaintiff who conceded that there were no threatened prosecutions under the statutes which he was challenging.

2. Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

ing. We agree. Although a past arrest under a particular statute does not, by itself, necessarily give rise to standing,[3] an inference may be drawn from that past arrest as well as from other circumstances in the case that a future arrest for the same conduct is likely. Where there exists such a likelihood of prospective proscription of conduct allegedly protected by the First Amendment, a complainant has standing to challenge the statute under which that conduct is threatened with governmental sanction and thereby "chilled."[4]

▆ Under these general principles, the facts in the case at hand establish even a stronger claim to standing than those in Lido East Theatre Corp. v. Murphy, 337 F.Supp. 1345 (S.D.N.Y.), in which Judge Weinfeld determined that a movie exhibitor was entitled to standing (and a three-judge court) to attack the constitutionality of a seizure and arrest procedure under which he had never been arrested nor had had any films seized. It sufficed for standing in Lido that widespread arrests and seizures had been made under the challenged procedure and that plaintiff alleged, as does the plaintiff here, that he would continue to exhibit the same kind of "adult films" that he had always exhibited and that had been seized from other similar exhibitors resulting in their arrests. Since in Lido the prosecutor stipulated that he would not, for the time being, attempt to prosecute the plaintiff for the exhibition of the film presently being shown, which film, had already been seized from another exhibitor resulting in that other exhibitor's arrest, Id. at 1346, 1348, the plaintiff's challenge was directed at the future exhibition of sexually-oriented adult films in general rather than at any films in particular. Thus, Lido and the case at hand are remarkably similar, except for the fact that in this case the plaintiff has already been subject to arrest for his conduct. Although no widespread pattern of enforcement of the New Jersey anti-obscenity laws using the definition of obscenity in N.J.S. 2A:115–1.1 (Supp. 1972) as it presently stands has been shown,[5] the pattern of past arrests of the plaintiff himself for exhibiting films

---

3. Thus in Golden v. Zwickler, 394 U.S. 103, 109, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), Zwickler, who had previously been arrested for distributing anonymous handbills in support of a particular Congressional candidate in connection with the 1964 campaign, was denied standing to challenge the New York statute which made the distribution of such anonymous handbills unconstitutional. The court in Golden found that since Zwickler's candidate had become a judge subsequent to the 1964 election, the likelihood of Zwickler becoming involved in a Congressional campaign in 1966 on behalf of this particular candidate was so "conjectural" that he did not have the necessary adversity of interest. Golden merely stands for the proposition that a prior arrest does not always give rise to the threat of a future one, especially where the activity for which the prior arrest was made may not be continued. Golden may be distinguished from the case at hand, inasmuch as the plaintiff here continues to show sexually-oriented adult films of the type which gave rise to his previous arrests under the less restrictive, prior anti-obscenity statute. The arrests and prosecution under the former statute bear directly upon the imminence of prosecution under the present one since plaintiff continues to exhibit the same genre of films.

4. The likelihood of future sanctions need not even be proved from past arrests. Thus, in Police Dep't. of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed. 2d 212 (1972), the likelihood of sanction of allegedly protected conduct sufficient to warrant standing was found to exist where a complainant, who had never been arrested for his continued picketing of a Chicago high school, called the police to ask if his picketing was proscribed by a newly-passed ordinance, and was told that such conduct was proscribed and that he would be arrested if he continued to picket.

5. See YWCA v. Kugler, 342 F.Supp. 1048 (D.N.J.1972) (three judge court), and Anderson v. Vaughn, 327 F.Supp. 101 (D.Conn.1971) (three-judge court), in which enforcement of statute against others gave rise to standing for plaintiffs who themselves had never been arrested.

of the general "genre" that he intends to continue exhibiting establishes as much, if not more, of a likelihood of prosecution for him that it did for the theater owner in *Lido*. Moreover, the fact that plaintiff has not been arrested for exhibition of sexually-oriented adult films since the inception of this action does not change the fact that at the time the suit was brought, the likelihood of prosecution was great.[6] Unlike the State of Connecticut in Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 752, 6 L.Ed.2d 989 (1961), the State of New Jersey intends to enforce the statute under attack. Plaintiff's past arrests under a less restrictive obscenity law as well as his continued intention to exhibit the same kind of movies that gave rise to his earlier arrests establish a sufficient likelihood of prosecution to give the plaintiff here the requisite adversity of interest for standing.

## II.

## ABSTENTION

■ Defendants contend that, assuming standing, the District Court should defer to the State courts and abstain from determining the Constitutional issue presented. Abstention is proper, however, only in narrowly prescribed circumstances. Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). A federal court, for example, cannot abstain merely because appropriate relief is available in a State court. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Zwickler v. Koota, 389 U.S. at 248, 88 S.Ct. 391. Nor is

abstention proper under Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed. 2d 696 (1971), as defendants contend, merely because there may be no immediate threat of irreparable harm. The lack of such immediate threat of irreparable harm in *Boyle* was pertinent to the issue of standing, rather than to abstention. As the First Circuit explained in Wulp v. Corcoran, 454 F.2d 826, 830 (1972):

> "Although at several points in the Court's opinion in Boyle v. Landry Justice Black emphasized the absence of an 'irreparable injury' to the constitutional rights of plaintiffs, the dispositive aspects of the decision related to plaintiffs' lack of standing or, perhaps more precisely, to the absence of the requisite 'case or controversy.' "

*Boyle* thus does not stand generally for the proposition that abstention is proper where no irreparable harm can be shown. This contention is refuted specifically by the Supreme Court in Lake Carriers' Ass'n v. MacMullan, 406 U.S. at 509, 92 S.Ct. 1749, 498 L.Ed.2d 257 (dicta), referring to Justice Brennan's concurrence and dissent in Perez v. Ledesma, 401 U.S. 82, 93, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). The only court which seems to have adopted defendants' view is the Fifth Circuit in Becker v. Thompson, 459 F.2d 919 (5th Cir.), rehearing denied, 463 F.2d 1338 (5th Cir. 1972) *(en banc)*, which rejects Wulp v. Corcoran, as well as Justice Brennan's concurrence and dissent in Perez v. Ledesma, *supra*, and which *en banc*, 463 F.2d at 1338, refuses to follow the dicta in the Supreme Court's decision in Lake Carriers' Ass'n, supra [7] 406 U.S. at 509, 92 S.Ct. 1749.

---

6. It may well be that the State is refraining from any action against the plaintiff until a determination has been made in this litigation. To allow an inference to be drawn from the lack of State action during the pendency of such a suit as this to the effect that no prosecution is likely, where independent evidence at the inception of the suit established such a likelihood, would vitiate entirely a plaintiff's rights to a declaratory judgment as to the legality of his conduct.

7. Noteworthy in *Becker v. Thompson* is Judge Tuttle's concurrence:
   "Since, however, the majority has made such a broad pronouncement on the meaning of Younger albeit in a case where the facts did not justify so broad a decision, I cannot help but note that the conclusion reached seems, to my mind, entirely wrong. Attempting to hold that even when there is no state court prosecution pending, a litigant must show bad faith harassment to give

We conclude that the mere showing of the lack of an immediate threat of irreparable injury does not call for abstention. YWCA v. Kugler, 342 F.Supp. 1048, 1060 (D.N.J.1972) (three-judge court). The question of whether or not irreparable injury exists goes to the appropriateness of injunctive relief rather than to the issue of abstention. *See* YWCA v. Kugler, 463 F.2d 203 (3rd Cir. 1972).

■ Since this is not a case where a state prosecution is pending, abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is inappropriate. *Younger* has no application in a case where no such prosecution is in progress. *Younger,* 401 U.S. at 41, 91 S.Ct. 746; *Lake Carriers' Ass'n,* 406 U.S. at 510, 92 S.Ct. 1749; Perez v. Ledesma, 401 U.S. 82, 103, 104 (Brennan, J. concurring and dissenting); Lewis v. Kugler, 446 F.2d 1343, 1347 (3rd Cir. 1971).

In the case at hand, abstention would be proper only if the statute under attack were susceptible to a construction that avoided or modified the constitutional question. Zwickler v. Koota, 389 U.S. 241, 248, 249, 88 S.Ct. 758, 27 L.Ed. 2d 696 (1967); Wisconsin v. Constantineau, 400 U.S. 433, 438, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971). The defendants contend that the challenged statute is susceptible to just such a construction thereby justifying abstention. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 174 (1970).

■ The first prong of defendants' argument is that the definition of ob-

scenity in the New Jersey statute under challenge, complies with the Constitutional definition of obscenity as set forth by the prevailing opinion, that of Justice Brennan, in Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed. 2d 1 (1967), in which, in order to be obscene, material had to be "utterly without redeeming social value." (We shall refer to this as the "social-value" test or requirement.) Defendants contend that although the statute excludes the phrase "utterly without redeeming social value," it may be so construed to include it. In support of this contention, defendants point to Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 814, 815 (M.D. Ala.1969) (three-judge court), and the cases cited therein, in which various three-judge courts upheld the Constitutionality of statutes that did not explicitly include the social-value requirement in their definitions of obscenity. These courts found that statutes using the definition of obscenity promulgated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) [8] did not explicitly need to add the social-value requirement because, as the Supreme Court said in Memoirs, 383 U.S. at 418, 419, 86 S.Ct. 975, that requirement had always been part of the *Roth* test. Entertainment Ventures, 306 F.Supp. at 814; Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La. 1969) (three-judge court), reversed on other grounds sub nom. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

These cases, however, do not permit us to read the social-value requirement into the New Jersey statute. In *Entertainment Ventures,* for example, the Alabama statute under challenge was passed

---

federal jurisdiction in the case of facial invalidity of the statute involved, and regardless of the fact that First Amendment rights may indeed be chilled, represents more than the great deference we must and should show to our state court brethren. It represents the abdication of our duty as federal judges where called on to decide what is solely a federal question. Closing yet another federal door in the face of a litigant rais-

ing only federal questions is to my mind, federalism turned on its head." 459 F.2d 924. *See also* 463 F.2d 1338 (5th Cir. 1972) (rehearing denied en banc) (dissenting opinion).

8. " 'Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest.' "

in 1961 (*Entertainment Ventures*, 306 F.Supp. at 813), five years prior to *Memoirs* and two years prior to Jacobellis v. Ohio, 378 U.S. 184, 191, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1963), in which Justice Brennan speaking for the Court, first drew explicit attention to the social-value requirement. Thus the Court in *Entertainment Ventures* could, according to accepted canons of statutory construction, conclude that the Alabama legislature intended to pass a Constitutional statute and could read into the *Roth*-type statutory definition what the Supreme Court itself had read into *Roth* in *Jacobellis* and *Memoirs*. Similarly, in Great Speckled Bird v. Stynchcombe, 298 F.Supp. 1291, 1292 (N.D.Ga. 1969) (three-judge court), the Court could read the social-value requirement into Georgia's definition of obscenity which had been derived directly from ALI MODEL PENAL CODE § 207.10(2) (Tent.Draft No. 6, 1957).

The statutory history behind the adoption of the current *Roth*-type definition of obscenity in the challenged New Jersey statute leads to an opposite conclusion. Prior to 1971 the New Jersey obscenity statute did contain the social-value requirement. L.1962, c. 165, § 1, as amended, L. 1966, c. 199. The 1971 law thus specifically expunged this requirement. To read back into the definition of obscenity that which was deliberately excluded flouts all canons of statutory construction and contradicts the explicit legislative purpose which was to reject the *Memoirs* "interpretation" of *Roth* and to return to "the only definition of 'obscenity' in which a majority of its [the Supreme Court's] members have ever concurred—viz., that the 'obscene' is that which predominantly appeals to prurient interest." Legisla-

tive Statement on L.1971, c. 449, appearing as note to N.J.S. 2A 115–1.1 (Supp.1972). The legislative history reveals that the New Jersey Legislature, in an attempt to facilitate obscenity prosecutions, decided that since only three judges in *Memoirs* concurred in the social-value requirement, that requirement was not the law of the land, and that therefore the Legislature could constitutionally strike the social-value requirement from its definition of obscenity.[9] N.J.S. 2A:115–1.1a (Supp. 1972). The statute is thus susceptible to only one interpretation, an interpretation which rejects the social-value test. Since no New Jersey court could thus interpret the statute so as to avoid the Constitutional question, abstention is improper, and it is the duty of the federal court to decide whether or not the statute is Constitutional. Wisconsin v. Constantineau, 400 U.S. 433, 438, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970); Zwickler v. Koota, 389 U.S. 241, 248, 249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971).

## III.

## THE CONSTITUTIONALITY OF THE STATUTE

Defendants argue that since the three-pronged definition of obscenity in *Memoirs* [10] incorporating the social-value test was concurred in by only three Justices (Justices Brennan, Warren and Fortas), the *Memoirs* standard does not construct a Constitutional guideline which the New Jersey Legislature is obliged to follow. Defendants argue further that since Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), is the only case in which a majority concurred upon the standard to be used, the *Roth* definition (*see* n. 8 *supra*), as seen

9. On page 51 of their brief, defendants acknowledge that this is the legislative purpose underlying L.1971, c. 449.

10. 383 U.S. at 418, 86 S.Ct. at 977:
"Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material

taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

by the defendants to exclude the social-value requirement, is the only one that New Jersey is "constitutionally bound to follow." [11] Defendants' brief at 51.

■ We do not agree with this argument of defendants. The three-pronged definition of obscenity which contains the social-value requirement adopted by the prevailing opinion in *Memoirs* is the narrowest rationale for that decision and therefore embodies the Constitutional standard. Justice Black did not subscribe to the standard, not because he considered that obscenity encompassed a broader range, but because he believed that "the Federal Government is without any power whatever under the Constitution to put any type of burden on speech and expression of ideas of any kind. . . ." *Memoirs*, 383 U.S. at 421, 476, 86 S.Ct. at 950 (Black, J., concurring). Similarly, Justice Douglas concurred on the grounds that "the First Amendment does not permit the censorship of expression not brigaded with illegal action." *Id.* at 426, 86 S.Ct. at 981. In addition, it seems clear that Justice Stewart accepted the social-value requirement in his concurrence. *Id.* at 421, 499, 86 S.Ct. 975. Stewart, acknowledged that the social-value requirement was present in *Roth*, and that along with other elements of the definition of obscenity, that requirement coalesced into an easily identifiable class of material which Stewart had previously defined as hard-core pornography. Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1963) (concurring opinion). That Justice Stewart considered the social-value requirement as essential is further illustrated by his dissent in Fort v. City of Miami, 389 U.S. 918, 88 S.Ct. 231, 19 L.Ed.2d 263 (1967), in which Justices Stewart, Black, and Douglas considered a statutory definition of obscenity which excluded the social-value requirement to be unconstitutional on its face.[12] Thus at least five and probably six justices of the *Memoirs* Court announced that by their standards any expression that had redeeming social value was protected by the First Amendment.

■ Contrary to the contention of defendants, this holding of *Memoirs*— i. e., that any expression which is not utterly without redeeming social value is protected by the First Amendment— has never been rejected. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 2091, 18 L.Ed.2d 515 (1967), which defendants cite as rejecting the *Memoirs* test, merely holds that under any of the standards —that of *Memoirs*, the hard-core pornography test of Stewart, or the "pure" *Roth* test (excluding the social-value requirement)—the challenged publication was not obscene. *Redrup*, 386 U.S. at 771, 87 S.Ct. 2091. Until *Memoirs* is explicitly overruled by the Supreme Court or by Constitutional Amendment, it sets the Constitutional standard. Under its holding, the present New Jersey definition of obscenity, N.J.S. 2A:115–1.1 (Supp.1972), cannot stand.[13]

## IV.

### THE PROPRIETY OF INJUNCTIVE RELIEF

■ Under the Federal Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil Procedure, injunctive relief is available only upon a showing of irreparable injury. No such irreparable

11. Defendants also suggest (Defendants' brief at 58, 59) that since the personnel of the Supreme Court has so dramatically changed since 1967, the Memoirs standard is no longer valid. Such an attempt to predict what the Court will do next does not carry the weight of *stare decisis*.

12. The dissent in this case was not on the merits, but rather on the denial of *certiorari*.

13. Memoirs has been favorably referred to by the Supreme Court in Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972) and has been adopted as well by Circuit Courts. *See e. g.*, United States, v. A Motion Picture Film, 404 F.2d 196 (2d Cir. 1968).

injury has been demonstrated by the record here. Nor has there been any showing of bad faith harassment of the plaintiff or overzealous enforcement by the defendants which might warrant enjoining the state from enforcing the statute as against the plaintiff. Also, the availability and adequacy of a declaratory judgment here would dictate against granting injunctive relief. *See* Wulp v. Corcoran, 454 F.2d 826, 835 (1st Cir. 1972).

## V.

## THE PROPRIETY OF DECLARATORY RELIEF

■ In Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967), the Supreme Court held that a federal District Court

"has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."

Thus, even though the plaintiff may not demonstrate sufficient irreparable injury to entitle him to an injunction against the enforcement of the New Jersey anti-obscenity law as against him, he is still entitled to a declaration of rights as between him and the defendants. The Third Circuit has already stated that Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), which forecloses declaratory relief where a state criminal prosecution is pending, does not apply in pre-prosecution contexts. · Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971); YWCA v. Kugler, 342 F.Supp. 1048 (D.N.J.1972) (three-judge

court), aff'd. 463 F.2d 203 (3rd Cir. 1972) (affirming denial of injunctive relief and granting of declaratory relief). The same position is taken by the First Circuit in Wulp v. Corcoran, *supra*, 454 F.2d at 832, in which the Court recognized that to require a plaintiff to show irreparable injury in order to merit a declaratory judgment would in effect repeal the Federal Declaratory Judgment Act. *Contra* Becker v. Thompson, 459 F.2d 919 (5th Cir.), rehearing denied, 463 F.2d 1338 (5th Cir. 1972) (*en banc*).[14]

■ The difference between enjoining the defendants from enforcing the obscenity statute against this particular plaintiff and simply rendering a declaratory judgment may be slight in practical terms, but important from the point of view of federal-state relations. The declaratory judgment is a less coercive, milder form of relief which, while retaining the force and effect of a final judgment, pays deference to the good faith and sovereignty of the state authorities.[15]

## VI.

## CONCLUSION

The application on the petition of the plaintiff for declaratory relief that New Jersey L.1971, c. 449 (codified at N.J.S. 2A:115-1.1 (Supp.1972)) is unconstitutional on its face as in violation of the First Amendment is granted; the prayer for injunctive relief is denied.

Each party shall bear its own costs and submit an appropriate order consistent with this opinion at the earliest possible time.

---

14. *See* page 47 *supra*.

15. Since this is not a class action, neither injunctive nor declaratory relief will apply to persons other than the plaintiff. As to persons other than the plaintiff who may be prosecuted under the State law, a declaratory judgment has the effect only of *stare decisis*. YWCA v. Kugler, 463 F.2d 203 (3rd Cir. 1972). Even so:

"The persuasive force of the court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew." Perez v. Ledesma, 401 U.S. at 125, 91 S.Ct. 674, 697 (Brennan, J., concurring and dissenting).