**Robert Dean MATTIS, M.D., Appellant,**

v.

**Patrolman Richard R. SCHNARR et al.,**
**Appellees.**

**No. 73–1511.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1973.

Decided Aug. 23, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 8, 1974.

Eugene H. Buder, St. Louis, Mo., for appellant.

Eugene K. Buckley, and F. Douglas O'Leary, St. Louis, Mo., for appellees.

Before GIBSON, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Plaintiff appeals an order entered in this civil rights action by the United States District Court for the Eastern District of Missouri denying his prayer for damages [1] and declaratory judgment.

The case was tried below upon stipulated facts. The plaintiff's minor son, Michael, age eighteen, was shot and killed by defendant Marek, a police officer, while attempting to escape arrest. Michael and another youth, Thomas Rolf, age seventeen, had entered the office of a golf driving range at night for the purpose of taking money by opening an unlocked window. Marek and another officer attempted to arrest the two youths who ran in different directions. Marek ran into Mattis, Mattis broke away and Marek pursued. Marek was losing the race and shouted, "Stop or I'll shoot." Mattis failed to stop and Marek fired one shot (he believed he fired well above Mattis) which struck Mattis in the head. Marek and the other officer would:

\* \* \* testify that their use of their guns in the manner described was reasonably necessary under the circumstances and was authorized by the statutes of the State of Missouri and that such statutes were valid and lawful.

Mattis v. Kissling, et al., Civil No. 72–Civ. (3) (E.D.Mo., filed January 16, 1973).

The trial court initially held that the plaintiff had standing to bring this action under Title 42 U.S.C. § 1983. It reasoned that the section did not create a new cause of action in favor of a person for the wrongful death of another, but that § 1988 of the same title authorizes resort to state law to determine whether a cause of action survives for the wrongful death of another. Pritchard v. Smith, 289 F.2d 153 (8th Cir. 1961). It further reasoned that since Missouri law (V.A.M.S. § 537.080) permits a father to bring a wrongful death action for the death of an unmarried minor son,[2] the father had standing to bring this action.[3]

---

1. No appeal is taken from that part of the trial court's order denying plaintiff's damages. This action was originally commenced by Dr. Mattis and his wife, Christine Mattis, who died while the action was pending.

2. V.A.M.S. § 537.080. Action for wrongful death—who may sue

Whenever the death of a person shall be caused by a wrongful act \* \* \* and the act \* \* \* is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered.

(1) By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; \* \* \*

(2) \* \* \* [I]f the deceased be a minor and unmarried, then by the father and mother, natural or adoptive, who may join in the suit, and each shall have an

equal interest in the judgment; or if either of them be dead, then by the survivor; or if the surviving parents are unable to decline or refuse to join in the suit, then either parent may bring and maintain the action in his or her name alone, for the use and benefit of both such parents; \* \* \*

3. *Accord,* Brazier v. Cherry, 293 F.2d 401 (5th Cir.), cert. denied, 368 U.S. 921, 82 S. Ct. 243, 7 L.Ed.2d 136 (1961); Holmes v. Silver Cross Hospital of Joliet, Illinois, 340 F.Supp. 125, 128–129 (N.D.Ill.1972); Perkins v. Salafia, 338 F.Supp. 1325, 1326–1327 (D.Conn.1972) (looked to state law which did not provide right of action); Salazar v. Dowd, 256 F.Supp. 220, 222–223 (D.Colo. 1966); Galindo v. Brownell, 255 F.Supp. 930 (S.D.Cal.1966); C. Antieau, Federal Civil Rights Act—Civil Practice 117, 591 (1971). See, Annot., 88 A.L.R.2d 1153, 1158, § 4(a) (1963). In Brazier v. Cherry, *supra,* 293 F.2d at 404, the Court said:

\* \* \* [I]t defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like

The court went on to hold, however, that the defense of good faith was available to the defendants as they had acted in reliance on Missouri statutes [4] which permit a law enforcement official to use deadly force in apprehending a person who has committed a felony. The court reasoned that the defense of good faith was available even if the statute was unconstitutional as the defendants had acted on the reasonable belief that it was constitutional. It concluded that no justiciable issue was present which permitted declaratory relief.

The plaintiff then moved for a new trial and entry of a new judgment. The trial court modified its position with respect to the plaintiff's standing in its order denying that motion. It stated:

Plaintiffs * * * claim for the wrongful death of Michael C. Mattis is derivative. None of their own civil rights are alleged to have been violated. "While a party may vindicate his own constitutional rights, he may not seek vindication for rights of others."

The trial court also advanced an alternative reason for denying relief:

* * * Plaintiffs seek declaratory relief and not injunctive relief. Only a three-judge court could enjoin the enforcement of a state law. 28 U.S.C. § 2281. It seems to this court particularly inappropriate to be asked to make a declaration that a statute is unconstitutional, without the power to enforce that holding and without that holding having any binding effect upon any other court. Plaintiffs presumably could have asked for injunctive relief and sought a three-judge court for that purpose, but they did not elect to do so. "In light of this fundamental conception of the Framers as to the proper place of the federal courts in the governmental process of passing and enforcing laws, it can seldom be appropriate for these courts to exercise any such power of prior approval or veto over the legislative process." Younger v. Harris, [401 U. S. 37] at 53, 91 S.Ct. 746, 27 L.Ed.2d 669 [1970].

■■■ We agree with the trial court's initial conclusions that the plaintiff had standing, and that the defenses of good faith and probable cause were available to the officers insofar as the action for damages was concerned. We cannot agree, however, that good faith is a defense to the action insofar as declaratory relief is concerned. Nor can we agree with declaratory relief is otherwise inappropriate.[5]

■■■ The plaintiff's right to declaratory relief is not dependent upon a showing that he is entitled to injunctive or monetary relief.

* * * Where there is * * * a concrete case admitting of an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * And as it is not essential to the exercise of the judicial power that

---

precision, it meant to withdraw the protection of civil rights statutes against the peril of death.

4. V.A.M.S. § 559.040. *Justifiable Homicide*
   Homicide shall be deemed justifiable when committed by any person in either of the following cases:

   *      *      *      *      *

   (3) When necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot or insurrection, or in lawfully keeping or preserving the peace.

V.A.M.S. § 544.190. *Rights of Officer in Making Arrests*
   If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest.

5. We express no opinion as to the constitutionality of these statutes but note only that the claim is not frivolous. Many question the use of deadly force when neither actual or threatened deadly force has been used in the commission of the crime nor serious bodily harm has been threatened or resulted. Prosser, Law of Torts § 26 (4th ed. 1971),

an injunction be sought, allegations that irreparable injury is threatened are not required. [Citations omitted.] Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■■ Declaratory and injunctive relief, while similar in some respects, are distinct remedies. One testing the constitutionality of a state statute in federal court may ask for declaratory relief only. He need not ask for injunctive relief; and if he does not do so, a single judge can hear the case and give declaratory relief as appropriate.

In Powell v. McCormack, 395 U.S. 486, 517–518, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491 (1969), the Supreme Court stated:

We need express no opinion about the appropriateness of coercive relief [mandamus or injunction] in this case, for petitioners sought a declaratory judgment, a form of relief the District Court could have issued. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a district court may "declare the rights . . . of any interested party . . . whether or not further relief is or could be sought." The availability of declaratory relief depends on whether there is a live dispute between the parties * * * and a request for declaratory relief may be considered independently of whether other forms of relief are appropriate. * * * [Citations omitted.]

See also, Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L. Ed.2d 378 (1970); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 544, 9 L.Ed.2d 644 (1963); United Public Workers v. Mitchell, 330 U.S. 75, 67 S. Ct. 556, 91 L.Ed. 754 (1947).

■ Moreover, the defense of good faith is only what its name implies. It is a defense which shields a public official from being required to respond in damages.[6] It is intended to avoid penalizing an official who acts in the good faith belief that he is acting in accordance with a valid law. The defense cannot be permitted to serve as a reason for denying equitable[7] or declaratory relief [8] in appropriate situations.

■ We also find unpersuasive the trial court's other alternative ground for dismissing the case. A declaratory judgment would not, as the trial court suggests, be totally ineffectual. Such a judgment has " * * * the force and effect of a final judgment or decree and is [reviewable as such] * * *." 28 U.S.C. § 2201. The judgment is res judicata and the doctrine of collateral estoppel is applicable. Wright & Miller, Federal Practice and Procedure Civil § 2771. The judgment is precedential as

---

6. The defense of good faith should be read against the background of tort liability. Clearly the defense is intended to apply only to the damage action. See, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 919, 28 L.Ed. 2d 230 (1971).

7. In Strickland v. Inlow, 485 F.2d 186, 189 (8th Cir. 1973), cert. denied, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), we said: "Good faith is a defense in damage actions, but not in actions for equitable relief." In Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973), the plaintiff brought an action for damages and equitable relief (declaratory relief and an injunction) under § 1983 against the Lieutenant Governor of South

Carolina, the President Pro Tempore and all state senators for a violation of plaintiff's civil rights. The plaintiff alleged that a senate resolution permitting females to be employed as clerical assistants and committee attendants, but not as pages, was unconstitutional. The Court held that the defendants were immune from liability but remanded the case for the purpose of granting declaratory and injunctive relief.

8. In Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1971), the plaintiff brought an action under the Civil Rights Act (§ 1983) for violation of plaintiff's constitutional rights. The Court held that the plaintiff was entitled to declaratory relief but that the defendants had acted out of good faith and upon reasonable grounds; consequently, citing Pierson v. Ray, supra, the defendants were not liable for damages.

to the matters declared by it. Annot., 10 A.L.R.2d 782, 785 (1950). Most importantly, if the statute is declared unconstitutional, a defense based on a good faith belief of the statute's validity would no longer be available.

■ Moreover, no considerations of comity, federalism or abstention justifying the court in refusing to proceed are present here. *Compare, Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688 (1971).

■ The critical issue then is whether the plaintiff had standing. We believe the trial court's initial views on this matter were the correct ones. There are two aspects to this question: (1) the party seeking relief must show that he is sufficiently affected by the action he is challenging to justify consideration by the court of the validity of the action; and (2) the action violates the rights of the particular party who is attacking it and not of some third party. Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599, 599–600 (1962).

■ We believe the plaintiff showed that he would be sufficiently affected by the killing of his son to justify the courts considering the matter. The Missouri Wrongful Death Act (V.A.M.S. § 537.080) creates a vested right in the plaintiff to bring suit for the death of his minor son. *Spencer v. Bradley,* 351 S.W.2d 202, 207 (Mo.1961). The right of action is not derivative. The Missouri Supreme Court has said:

> It is now [well] settled that the causes of action provided by these statutes are not either derivative, transmissible, or survival causes of action, but are new causes of action springing into being and accruing on and by reason of the death of the party injured in favor of the persons named in the statute.

*Jordan v. St. Joseph Ry., Light, Heat & Power Co.,* 335 Mo. 319, 73 S.W.2d 205, 211 (1934).

Further, the Missouri Supreme Court has declared:

\* \* \* [T]he true ground of recovery by a parent in such cases arises from the reciprocal duty of the child to render to its parent such services or earnings as the latter may reasonably expect of it. \* \* \*

\*      \*      \*      \*      \*      \*

We hold that the right of a parent to a minor's services is in the nature of a personal right arising out of the family relationship, and is not a property right arising out of a psuedo contractual relationship.

*Mennemeyer v. Hart,* 359 Mo. 423, 221 S.W.2d 960, 962 (1949).

Thus, it is clear that Dr. Mattis is an injured party under § 1983, that he is suing in his own right for injuries personally sustained, and that he is sufficiently affected by action challenged to fulfill the first aspect of standing.

We turn to the more difficult question of whether the killing of the plaintiff's son invaded the plaintiff's constitutionally protected rights under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

To determine whether a right is protected by the due process clause, a court

> must look to the "traditions and (collective) conscience of our people" to determine whether a principle is "so rooted (there) . . . as to be ranked as fundamental." *Snyder v. Com. of Massachusetts,* 291 U.S. 97, 105 (54 S.Ct. 330, 332, 78 L.Ed. 674). The inquiry is whether a right involved "is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' . . .." *Powell v. State of Alabama,* 287 U.S. 45, 67 (53 S.Ct. 55, 63, 77 L.Ed. 158)

*Griswold v. State of Connecticut, supra,* 381 U.S. 479 at 493, 85 S.Ct. 1678 at 1686, 14 L.Ed.2d 510 (concurring opinion, Goldberg, J.).

*United States v. State of Texas,* 252 F. Supp. 234, 250 (D.C.Tex.), aff'd, 384 U.

S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434 (1966).

The Supreme Court has on numerous occasions observed that the framers of the Constitution intended to protect rights other than those specified.

> This Court, in a series of decisions, has held that the Fourteenth Amendment absorbs and applies to the States those specifics of the first eight amendments which express fundamental personal rights. The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there were additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments.

Griswold v. Connecticut, 381 U.S. 479, 488, 85 S.Ct. 1678, 1684, 14 L.Ed.2d 510 (1965) (Goldberg, concurring).

In Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), the Court stated:

> While this court has not attempted to define' with exactness the liberty thus guaranteed [Fourteenth Amendment guarantee against deprivation of life, liberty, or property without due process of law], the term has received much consideration, and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, *to acquire a home and bring up children,* to worship God according to the dictates of his own conscience, and, generally, to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. * * * The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive, but is subject to supervision by the courts. * * * (Citations omitted and emphasis added.)

The familial relationship between parent and child is fundamental to our civilization. The family is the foundation of society and hence the state. The traditions and common heritage of our people have always stressed the importance of the family bonds.

> Lo children are an heritage of the Lord: and the fruit of the womb is his reward.
>
> As arrows are in the hand of a mighty man; so are the children of the youth.
>
> Happy is the man that has his quiver full of them: they shall not be ashamed, but they shall speak with the enemies in the gate.

Psalm 27:3–5. We do not believe that the Constitution excludes this fundamental relationship from its protection.

> The entire fabric of the Constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and *raise a family* are of similar order and magnitude as the fundamental rights specifically protected.
>
> * * * The fact that no particular provision of the Constitution explicitly forbids the State from disrupting the traditional relation of the family—a relation as old and as fundamental as our entire civilization—surely does not show that the Government was meant to have the power to do so. Rather, as the Ninth Amendment expressly recognizes, there are fundamental personal rights such as this one, which are protected from abridgment by the Government though not specifically mentioned in the Constitution. (Emphasis supplied.)

Griswold v. Connecticut, supra, 381 U.S. at 495–496, 85 S.Ct. at 1688.

The practical effect of Officer Marek's act was to deny the plaintiff the fundamental right to raise his son. The plaintiff has a right to have the validity of the act determined. It is insufficient to say that since you cannot recover damages, you cannot challenge the statutes which occasioned the loss. Such a result would leave the plaintiff without a remedy. Chief Justice Marshall in Marbury v. Madison, 5 U.S. (1 Cranch) 87, 102–103, 2 L.Ed. 60 (1803), noted that such a result was untenable.

> * * * If he has a right, and that right has been violated, do the laws of this country afford him a remedy?

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. * * *

> * * * * * *

> " * * * [E]very right, when withheld, must have a remedy, and every injury its proper redress."

> The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appelation, if the laws furnish no remedy for the violation of a vested legal right.

We believe that "parenthood is a substantial interest of surpassing value and protected from deprivation without due process of law"[9]—a fundamental legal right. The plaintiff alleges that this fundamental right has been invaded. The only way to determine this issue is to examine the constitutionality of the statutes and a declaratory judgment action is an appropriate method to do this.

Finally, we turn to two questions raised by the dissent: whether the defendants have a sufficient stake in the outcome of the declaratory judgment action to meet the case or controversy requirement of Article III, § 1 et seq., and whether it is unfair, in a practical sense, to burden them with the defense of this action.

While it is clear that the judicial power extends only to "actual controversies arising between adverse litigants," Muskrat v. United States, 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911), we do not agree that defendants lack sufficient adverse interest. The defendants have a stake in the outcome because the declaratory relief sought would define their rights and powers as police officers. They have an interest in assuring that the law governing their official conduct is clear so that they may perform their duties in a manner consistent with the Constitution. This interest is not a financial one, but it is an adverse one, nevertheless. The defendants relied on state statutes in their use of deadly force against plaintiff's son; clearly, they perceive that those statutes govern their conduct and confer upon them a special power not held by ordinary citizens. The result of a declaratory judgment in favor of the plaintiff would be a curtailment of the power which defendants assert, and a removal of the defense of good faith in future damage actions.

For these reasons, the defendants do have a "greater legal interest in the question presented by plaintiff than * * * other citizens of Missouri." This is not to say that police officers can be required to litigate every declaratory judgment suit challenging a state criminal statute. Rather, they may be required on occasion to bear the much narrower burden of litigating the constitutionality of state criminal statutes which set forth their special rights and powers as governmental officers, which they assert shield them from damage actions, and upon which they rely in carrying out their official duties. This suit is no different, from the standpoint of adverseness, than an action for declaratory relief against one or more

---

9. White v. Minter, 330 F.Supp. 1194, 1197 (D.Mass.1971) ; see, Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

county voting registrars who exclude certain voters from the ballot in reliance on an allegedly unconstitutional state statute providing for a poll tax, literacy test, or residency requirement. *See,* Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939). *Cf.,* Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D.N.J.1972) (state anti-obscenity law declared unconstitutional in action against county prosecutor). Those who would use a statute as a shield must be prepared to defend the constitutional validity of that shield.

■ Once it is seen that defendants Marek and Schnarr are proper parties, and that a case or controversy does indeed exist, the practical question of whether or not it is unfair to name them as defendants becomes irrelevant. That issue has long since been resolved by Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), which held that a state official who attempts to assert powers conveyed by an unconstitutional enactment "[is] stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 159–160, 28 S.Ct. at 454. In numerous cases since that decision, the federal courts have permitted both equitable and legal actions against government officials without pausing to inquire whether or not it is fair that the named defendant bear the burden of the defense. *See, e. g.,* Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (superintendent of documents and public printer); Powell v. McCormack, 395 U. S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (congressional employees); Lane v. Wilson, *supra.* We add, however, that public agencies have the right to assist in the defense of this type of action should they choose to do so.

Since the state has power to intervene under Rule 24, it can, if it so desires, move both to assure that its voice is heard and to assist defendant police officers. A copy of the complaint was mailed to the state Attorney General at the outset of this proceeding and, on remand, it will, of course, be appropriate to give the state an opportunity to be heard on the issue of declaratory relief.

Reversed and remanded with directions to the trial court to determine whether the plaintiff is entitled to have the statutes in question declared unconstitutional. On such remand, it will, of course, be appropriate to give the state an opportunity to be heard on the issue.

GIBSON, Circuit Judge (dissenting).

I respectfully dissent. The majority's decision transgresses a fundamental Constitutional limitation on judicial power. In short, there exists no "case or controversy" regarding plaintiff's request for declaratory judgment that would permit invocation of the judicial process. My disagreement with the majority lies not with the standing of the plaintiff, but with the majority's failure to discern that the required adversariness of legal interests to render a claim justiciable is absent in this case. This case is not cast in an adversary mold. The defendants have no legal interest in upholding the constitutionality of the statutes under attack nor should they have an obligation to do so.

I agree with the majority that a father should have standing to seek redress for the alleged unconstitutional deprivation of the life of his son. And even though I personally feel that the use of the declaratory judgment statute to challenge the constitutionality of a state statute is a "back-door" approach to circumventing the requirement of a three-judge district court set out in 28 U.S.C. § 2281, the decided cases support the majority's holding that a three-judge court is not required in this case. However, I cannot agree that the combination of a plaintiff with standing and a properly constituted court suffices to establish a "case or controversy" in the

Constitutional or statutory [1] sense. If a plaintiff does not sue a proper party, no amount of standing and no number of judges can create a justiciable controversy.

The plaintiff asks that we determine that the existence of an actual controversy between him and defendants over their liability for damages under 42 U.S.C. § 1983 may somehow be imputed to his claim for declaratory relief under 28 U.S.C. § 2201. This we cannot, or more accurately since the majority has done so, should not do. The issuance of a declaratory judgment, the same as a resolution of a claim for damages, requires an actual controversy between parties having adverse legal interests. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Paper Carriers Union No. 450 v. Pulitzer Publishing Co., 309 F.2d 716 (8th Cir. 1962); Johnson v. Fidelity & Casualty Co., 238 F.2d 322 (8th Cir. 1956). As stated by the Supreme Court in *Maryland Casualty Co., supra,* 312 U.S. at 273, 61 S.Ct. at 512:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

See also Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149–157, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Mr. Justice Frankfurter concurring); 6A Moore's Federal Practice ¶ 57.11–57.15 (2d ed. 1974).

The adverse legal interest required must relate to the claim for declaratory judgment. An adverse legal interest relative to a damage issue will not suffice, without more, to establish the adverse legal interest required. to determine a constitutional question. The circumstances of this case reveal that the defendant police officers have no legal interests adverse to that of the plaintiff concerning the constitutionality of the challenged statutes.[2] The real concern of the defendants in this lawsuit is their possible liability for damages. The damage issue was resolved in the District Court and no appeal was taken on that issue.

Here a decision as to the constitutionality of these statutes does not affect the decision in defendants' favor on the damage question as the defendants in good faith relied on the validity and lawfulness of the statutes. Once absolved of liability for damages, the defendants have no greater *legal* interest in the question presented by plaintiff than any other citizens of Missouri [3] nor

---

1. 28 U.S.C. § 2201 provides:

   In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. This is succinctly indicated in defendants' brief:

   This basic complaint of Dr. Mattis in this appeal is directed not at the [liability of defendants], but at the District Court's refusal to decide the constitutional question. This contention creates a problem for appellees because their real concern is the fact that money damages had been sought against them and their status in that regard. Marek and Schnarr, as citizens and police officers, * * * are naturally interested in the broader question raised by appellants, but such interest is necessarily limited by the economic facts of life existing in an attorney-client relationship where funds of a public interest group are not available.

3. It cannot seriously be contended that defendants' status as police officers places them in a position where they can be required to litigate declaratory suits challenging state criminal statutes.

should they be burdened with the task and expense of litigating the constitutionality of state statutes.

The State of Missouri or a proper official thereof can be the only proper party defendant on this claim for declaratory relief. It is inappropriate to note the State should be given an opportunity to be heard on the issue when in actuality the State should be the defendant. Of course, in making the State a defendant, the statutory requirements of 28 U.S.C. §§ 2281 and 2284 would have to be respected, and a three-judge district court convened to pass on the constitutional issue. The plaintiff apparently does not want to bring in the State as a party, in blatant disregard of the spirit, purpose, and intent of § 2281 to submit the constitutionality of state statutes to a three-judge court, rather than a single judge, as a matter of public policy. The courts, however, have acquiesced in this deception, utilizing questionable rationale to distinguish between an injunction based on a declaration of unconstitutionality of a state statute and a declaratory judgment declaring the same state statute unconstitutional. This distinction is based on procedure and not substance. The effect on the statute is identical and the crucial issue of constitutionality resolved in either case.

It is interesting to note that the majority, to support its conclusion of sufficient adversariness of interest to sustain jurisdiction, cites Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); and Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D. N.J.1972). All these cases were brought before three-judge district courts convened pursuant to § 2281, precisely the procedure which I have suggested as

proper in this dissent. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939), the fourth case cited by the majority was an action for damages, not declaratory relief, and serves as no precedent for the majority's position. The majority states, "Those who would use a statute as a shield must be prepared to defend the constitutional validity of that shield." *ante* at 596. This may be true, but such a finely turned phrase cannot obscure the fact that the logic contained therein is inapplicable to the facts of this case. Here, defendants did not rely upon the constitutionality of the statutes in question to shield them from damages; instead, in accord with Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), it was their good faith belief in the statutes' constitutionality that served as their shield.

In the context of the instant case the issue is further exacerbated by utilizing a non-litigious procedural method which amounts virtually to an ex parte proceeding. The ex parte aspects of this case could not occur under a § 2281 proceeding as a state official must of necessity be made a party defendant and notice of the hearing given to the governor and attorney general of the state under § 2284(2). In making its suggestion, the majority implicitly recognizes that the case for constitutionality will likely receive an inadequate presentation on behalf of the present defendants. Nor could a court realistically expect more from an unwilling party with no adverse legal interest to be affected by the decision in this case. It is the general public which has a legal interest in upholding the constitutionality of the statute, and it is that public interest which is assured protection in a § 2281 proceeding. Here that interest will receive no protection, not perhaps because of philosophical disinterest but financial disinterest,

---

· It is interesting to note that the plaintiff is represented by the American Civil Liberties Union in his endeavor to have the state statutes declared unconstitutional, while the defendant police officers are on their own except for whatever insurance might be available to them to cover their personal lia-

bility. This is not meant as a reflection on the American Civil Liberties Union as it has a right to pursue issues in a judicial forum, but this in turn requires an adversary defendant capable of and interested in contesting the issue.

a compelling consideration to privately financed litigants.

I would affirm the judgment of dismissal, without prejudice to the institution of a proper action challenging the Missouri statutes in question.